Sims *vs.* Ferrill.

RICARD H. SIMS, plaintiff in error, *vs.* JOHN O. FERRILL, administrator, defendant in error.

1. When a bill charges that complainant was induced to sell land to defendant by representations of the latter, that the title was defective, and the defendant is also charged as standing in a fiduciary character to complainant, and that complainant would not have sold but for such representations, which were not true, it is not error to allow complainant to prove her conversations before the representations made to her, with a third person, in which she said she had no desire to sell, for the purpose of showing the state of her mind as to her willingness or unwillingness to sell before the representations were made, especially when defendant alleges she was always willing to sell, independently of any representations made by him to her.

2. If one of the counsel makes marginal marks on a paper which goes out with the jury to direct himself in argument, it is no error in the Court to refuse to compel him to rub them out before the paper goes to the jury—it not appearing that those marks conveyed any idea affecting the merits of the case.

3. Where an answer in equity is waived, the answer is not evidence against the allegations in the bill. Any admissions, however, made in the answer, stand upon the same footing with any other admissions of defendant and may be relied on by complainant as evidence of the facts admitted. The whole answer being before the jury, and the admissions being subject to such qualifications as may be gathered from other facts of the answer; but the jury are not bound to believe the qualifications.

4. A sale of land of a testator or intestate by the executor or administrator, in the manner prescribed by law, where the estate is insolvent, divests the liens of judgments obtained in the lifetime of the testator or intestate, and the creditor must look to the proceeds in the hands of the representative of the estate.

5. Trust and confidence reposed in a brother-in-law by his widowed sister-in-law requires the utmost *good* faith and *fair* dealing in any con-

tract of sale between them. A misrepresentation of the law by the brother-in-law to his sister-in-law, whereby she is led to believe her title to property held by her is invalid, and on this account she sells it to him, which sale is much to his advantage, vitiates the sale at her election, even though such misrepresentation was made in good faith.

6. Where, under the foregoing relations of trust and confidence, a sale is effected between the parties during the war, for Confederate money, which is to be paid in cash, and the brother-in-law applies a portion of the money to the extinguishment of a lien, supposed to rest upon the property without the widow's consent, but in accordance with what he alleges, and she denies to have been the bargain, pays the widow a portion, and retains a large portion in his own hands, without her consent, and for which he does not clearly account, she is entitled to a decree setting aside the sale upon her accounting for the Confederate money actually received by her at a fair valuation.

7. There is evidence to sustain the verdict of the jury in this case, and we find no material error in the charge or refusals to charge of the Court.

Equity. Evidence. Confidential relation. Conduct of counsel. Admissions. Judgment lien. Sale by executor. Rescission. Before Judge GREEN. Spalding Superior Court. August Term, 1871.

This case came on to be heard upon a bill filed by Mrs. Ann E. Ferrill against Richard D. Sims, in which complainant alleges that she is the widow of Benjamin W. Ferrill, deceased; that said Benjamin W. Ferrill conveyed to her by his will a certain lot of land, with the improvements thereon, situated in the county of Spalding; that John Q. A. Alford was appointed executor by said will; that said executor proceeded to sell said lot, for the purpose of paying off the debts of said estate, and that on April 17, 1863, said lot was knocked off to complainant for the sum of $500; that a few months after she purchased said lot, one Thomas J. Threlkeld, who is a brother-in-law of defendant, told your oratrix that a gentleman had told him that he would give her $6,000 for the place; that complainant replied: "Does that gentleman think I am crazy, that I would take such a price?" That a week or two afterwards defendant came to see

her about selling the lot, and advised her to dispose of the same, and urged that she had best advertise the place by hand-bills; that complainant consented; that defendant had the hand-bills printed, and called upon her for money to pay for them; that complainant was disposed to follow the advice of defendant, because she was nearly related to him by marriage, and was herself inexperienced; that she was easily imposed on, especially as she had then the utmost confidence in the judgment, business capacity and good faith of said defendant; that from the fact of defendant's subsequent management in buying the said place, and from the fact of his near relationship to the said Thomas J. Threlkeld by marriage, and their intimate connection, and from the fact that said defendant so soon thereafter commenced advising her to sell said place, complainant believes and charges that the said Thomas J. Threlkeld was requested by said defendant to begin the negotiations for him in that way; that said defendant endeavored to discourage persons from buying said place, by telling them that she could not make good titles to the same; that soon after defendant commenced advising her to sell, he told complainant that George Prothro had some old executions against her deceased husband, and that said Prothro would come and claim the place at the end of the war, and that it would take the whole place to satisfy the executions; that complainant would be turned out without a home, and that the best thing she could do would be to sell the place. Defendant further advised complainant that she ought to use the proceeds of said place in the purchase of negroes, in Southwestern Georgia, and commence farming. Complainant then asked defendant why not go to farming up here. Defendant replied that the lands there were much better than up here, and that he would give more for the place than any one else; that he would give $10,000 for the place, which proposition complainant accepted; that all of these occurrences transpired in the summer of 1863. Complainant further charges that on the day after she executed

the deed to defendant, he told her he would have to pay off the Prothro executions; that she told him she could have done just as well by letting Prothro take the place, for she would now be put to the trouble of moving, and get nothing; that defendant, on October 17th, 1863, paid to her $3,000 in Confederate money, then worth from $200 to $250, in gold, saying that was all that was coming to her, after deducting the amount of the Prothro executions; that defendant moved into the house on October 13th, 1863, and complainant moved out on the 17th of the same month; that defendant, as soon as he had moved in, and before complainant had moved out, said: "I am in here now, and nothing but death or law will ever get me out." Complainant charges that she fully relied on defendant for advice, and that she would not have sold said place, had it not been for his advice; that defendant made the false and fraudulent representations as to the liability of said place to the Prothro executions for the purpose of purchasing it for himself; that she waives discovery. Complainant prays a cancellation of the deed made by her to defendant, a rescission of the contract of sale, an account for the rent of the premises, valued at $500 per annum, and offers to credit the defendant with the value of the Confederate money paid to her. The answer of the defendant denied every material allegation in the bill.

The complainant died pending the suit, and her administrator was made a party. In the progress of the trial the conversation of complainant with Thomas J. Threlkeld was admitted in evidence by the Court, over the objection of the defendant, for the purpose of showing her unwillingness to sell her place. It appeared that the defendant was the brother-in-law of Mrs. Ann E. Ferrill. The evidence was conflicting, and as the errors alleged to have been committed are fully stated in the exceptions to the decision of the Court on the motion for a new trial, it is unnecessary to set it out here. The jury returned the following verdict: "We, the

Sims *vs.* Ferrill.

jury, find for the plaintiff, putting aside the sale, allowing the plaintiff $200 per annum rent, and allowing defendant $1,250 for improvements, and for the $3,000 purchase-money paid, $220 in currency, with interest from the date of sale." Whereupon defendant moved for a new trial, which motion was overruled by the Court, and defendant excepted upon the following grounds, to-wit:

1st. The Court erred in not withdrawing from the consideration of the jury, upon the motion of defendant's counsel, the conversation between Mrs. Ferrill, complainant's intestate, and Thomas J. Threlkeld, relative to the sale of said property in controversy; as testified to by Mrs. Ferrill by interrogatories in said cause.

2d. The Court erred in overruling the objection of defendant's counsel, made when the interrogatories of Mrs. Ferrill were being read to the jury, because the sayings of Thomas J. Threlkeld were not competent evidence in said cause, as testified to by her.

3d. The Court erred in charging the jury: "That if you believe from the evidence that complainant bought the land in dispute at executor's sale, her title to the same was good and valid, and not subject to the payment of the judgments against the intestate," because said charge was not only erroneous, but well calculated to mislead the jury, that question not being properly made an issue by proper parties, or proper averments before the Court, in the pleadings or evidence.

4th. The Court erred in the following charge: "If the jury shall believe from the evidence, that the relationship of confidence still existed between Mrs. Ferrill and Sims, by reason of kinship or agency, or of both, and that during the existence of this relation the contract in question was made, then the burden of proof was on Sims to show that the contract was in accord with the free will and interest of Mrs. Ferrill, when said contract is attacked for fraud, and that he must show this by clear and satisfactory proof, and if he has not done so in this case the jury must set aside the sale."

5th. The Court erred in the following charge: "That if you believe from the evidence that the defendant, by himself or agent, induced the complainant to sell him the premises or lands in dispute through fraud, deceit or misrepresentation, the sale ought to be set aside," there being no proof that the defendant had any agent in this transaction, from beginning to end, and the charge being otherwise unauthorized by the facts of the case.

6th. The Court erred in the following charge: "If you should believe that the complainant sold said land to the defendant, influenced thereto by the fear or belief that her title was doubtful or encumbered by judgments against the estate of B. W. Ferrill, when it was neither in truth doubtful nor encumbered; and if the defendant, by his statements or expressed opinions, created or contributed to that fear or doubt, you should set aside the 'sale, whether honestly or dishonestly made, or in good or bad faith;" said charge being calculated to confuse and prejudice the jury, and not authorized by the facts.

7th. The Court erred in the following charge: "That if the complainant sold the land to the defendant for the sum of $10,000, cash, the burden of proof is on the defendant, to show that he has paid the complainant the $10,000, or to some person, by her express order and direction."

8th. The Court erred in the following charge: "If you should believe that the sale was fair and *bona fide,* and that complainant made said contract freely and voluntarily, but defendant has failed to pay her the full and entire amount of the purchase-money, or any portion of it, the complainant is entitled to recover the amount, according to the value of the property, at any time, from the date of the contract to the present time, with interest thereon, allowing defendant for the amount paid, (if in Confederate money,) the value of said money at the time of payment," such not being the law of this State.

9th. The Court erred in the following charge to the jury:

Sims *vs.* Ferrill.

"That if you should believe that the defendant applied any portion of the purchase-money to the payment of the Prothro *fi. fas.*, it was not payment, or part payment, or discharge of his indebtedness to complainant for said land, unless complainant freely, voluntarily, and of her own will, expressly ordered and directed, uninfluenced by the expressed opinions or statements of the defendant, or that of his agent, that said land was subject to the payment of said *fi. fas.*"

10th. The Court erred in charging the jury, "that the defendant could not use the money due complainant to secure or get a transfer of the Prothro *fi. fas.* to himself by his own act, and if he did so, he did not relieve himself from his liability or indebtedness to her," there being nothing in the testimony to warrant the Court in so charging, and the charge being otherwise unauthorized by the law of the case.

11th. The jury found contrary to the following charge of the Court, to-wit: "It is the duty of the jury to reconcile all of the testimony if possible, and they must adopt that theory of the case which will reconcile all and impute perjury to none."

12th. The Court erred in the following charge: "A witness who swears positively must be believed in preference to one who swears negatively," there being no such state of facts in the case to justify such a charge; and in the following charge, upon the same ground: "A witness who testifies clearly and certainly must be believed in preference to one who is interested, changing and qualifying," because in giving this as a rule of law the Court gave a rule by which the witness' credit was to be attacked, instead of a rule of law by which the value of the testimony was to be determined; and in still adding: "A witness who is disinterested, straightforward and explicit, must be preferred to one who is interested, changing and qualifying," there being nothing in the case to authorize such a charge.

13th. The Court erred in the following charge: "A witness, and especially a party as his own witness, who is clearly

contradicted in a material statement by a disinterested and unimpeached witness, ought not to be believed as against one not so contradicted," without adding the qualification, "not so interested," there being nothing in the testimony justifying such a charge, but the contrary.

14th. The Court erred in the process of the trial and before the jury, as follows: When the defendant's counsel, on coming to read his answer, and finding a number of long and short cross marks and points, with several figures on the margin of the answer in pencil and ink, and on leave of the Court proceeded to rub them out as well as he could, and the same counsel on the final argument discovered that the concluding counsel was again marking the same or similar marks along on the margin of the answer, and objected to the same, and moved again for leave to strike them out, when complainant's counsel refused to strike out said marks and points, and stoutly maintained his right to put and keep them there, the Court refused to allow or direct said marks and points to be stricken out and permitted the concluding counsel to read such marked and pointed portions of said answer to the jury, and allowed the answer to go out to the jury thus marked and pointed.

15th. The Court erred in refusing to charge, as earnestly requested by defendant's counsel, " that if complainant's solicitors should read any part of defendant's answer as an admission, or as pleading, or as part of the evidence in the case, that they had no right to submit detached parts of the same, but that the whole statement of defendant is thereby made evidence and must be taken as a whole statement," and in charging, "that the answer is not evidence to contradict allegations in the bill, but is evidence as an admission against the defendant."

16th. The Court erred in charging the jury, "that one positive witness is to be believed in preference to any number of witnesses; where one testifies that he saw a certain thing happen and any number of witnesses may swear that

Sims *vs.* Ferrill.

they did not see it, and yet none may have committed perjury," because the evidence in the case did not justify such a charge, and the language was well calculated to mislead, confuse and prejudice the jury's mind.

17th. The Court erred in the whole of said charge as applied to the case, said charge being erroneous and calculated to, and did, no doubt, prejudice and influence the jury against the defendant.

18th. The Court erred in refusing to charge the jury as requested by defendant's counsel: ."That if the jury should find that there had been a mistake of law, unless it was brought about by the defendant, it is not sufficient to annul a contract of sale."

19th. The Court erred in refusing to charge the jury as requested by counsel for defendant: "That if the parties were mutually ignorant of the law as to the lien of the Prothro *fi. fas.*, and they made the contract in good faith, and mutually agreed to leave the question to the decision of an attorney, and he gave an erroneous opinion, by which both parties were misled, such a mistake is no ground for setting aside a contract of sale."

20th. The Court erred in refusing to charge the jury as requested by counsel for defendant: " In setting aside the contract of sale for fraud, the jury may consider the confidential relationship of the parties, but what the law means by confidential relationship is such as parent and child, guardian and ward, principal and agent—this relation is not established simply because the parties are brother-in-law and sister-in-law, but requires something more."

21st. The Court erred in giving in charge to the jury in his general charge the first two requests of complainant's counsel, as follows: " If the jury shall believe from the evidence that relation of confidence existed between Mrs. Ferrill and Sims, by reason of kinship or agency in Sims, or both, and during the existence of this relation, the contract in question was made, then the burden of proof is on

Sims to show that the contract was made in accordance with the free will and interest of Mrs. Ferrill, and that he must show this by clear and satisfactory proof, and if he has not done so in this case, the jury must set aside the sale. If the jury shall believe that the relation of confidence did not exist, yet if Mrs. Ferrill made the contract, influenced thereto by the fear that her title was doubtful or encumbered, when it was in truth neither doubtful nor encumbered; and if Sims, by his statements or expressed opinions created or contributed to that fear or doubt, the jury must set aside the sale, whether Sims was honest or dishonest in his statements," and the remaining requests by reading them and giving them in charge after the general charge, as follows: "If the jury shall believe that Mrs. Ferrill made the contract freely and of her own motion, and without mistake, and on an equal footing with Sims, yet if the consideration on the face and by the terms of the contract was $10,000 cash, then the burden of proof is on Sims to show that he has paid the $10,000 to Mrs. Ferrill, or to some other person by her express order and direction. That Sims could not use the money due Mrs. Ferrill in securing a transfer of the Prothro *fi. fas.* to himself by his own act, and if he did so, he did not discharge himself from his indebtedness to Mrs. Ferrill. If the jury shall set aside the sale under either of the two first propositions, they must decree a restoration of the property with the rent as proven, less the value of the money paid by Sims to Mrs. Ferrill, and less the amount actually paid out for substantial and permanent improvements. If the jury affirm the sale under the third or fourth proposition, they may decree the complainant the present value of the property, less the value of the money with interest thereon actually paid by Sims to Mrs. Ferrill," the same being unfounded in law and not justified by the evidence, and the law of the case, and by which an undue and prominent importance was given to the requests of complainant's solicitor.

22*d*. The verdict of the jury was contrary to the evidence

and the charge of the Court, in this, that the sum of $3,000, paid by the defendant to the complainant, was a payment of $3,000 in said purchase, and it was error in the jury to scale said amount to the sum of $250, the value, in United States currency, of said payment.

23d. The Court erred in refusing a new trial, upon the following grounds: 1st. That the charge of the Court was contrary to law, and not warranted and sustained by the facts of the case. 2d. That the verdict of the jury was contrary to evidence, and to the weight of evidence, and without law to support it.

C. PEEPLES; E. W. BECK; J. D. STEWART, for plaintiff in error.

B. H. HILL & SONS; D. N. MARTIN, for defendant.

MONTGOMERY, Judge.

In this case, the evidence is very conflicting, but that was a matter for the consideration of the jury. According to the case as made by the complainant, the defendant in error, the material facts are as follows: Benjamin W. Ferrill died in December, 1861, leaving a widow, Ann E. Ferrill, (the intestate of defendant in error,) to whom he left his residence and about eighty acres of land. By his will, he left F. O. A. Allford his executor. Allford qualified, and subsequently sold the house and land left to the widow, at executor's sale, to pay debts, as stated in the bill. The widow purchased the property through her brother-in-law, the plaintiff in error, and received titles from the executor. Shortly after, Thomas J. Threlkeld, a brother-in-law of R. H. Sims, the plaintiff in error, told her that a gentleman would give her $6,000 for the place. She informed him she did not desire to sell. After this, Sims advised her to sell, telling her that a Mr. Prothro held a judgment against her husband, which was a lien on the property, and that, at the close of

the war, it would be in his power to sell her out. Reposing trust and confidence in Sims, as her brother-in-law, she acceded to his advice, and asked him to assist her in the sale. He had hand-bills, offering the property for sale, struck off for her, and told her to ask $10,000 for it. This was in 1863, and the price named was in Confederate money. Several persons looked at it to buy, among others, I. G. Drake, (a witness for Sims,) who said Mrs. Ferrill offered him her place at $10,000, but he declined to give it on account of the supposed cloud over the title, caused by the outstanding judgment of Prothro. Sims advised him to buy. Ultimately, Sims agreed to give the widow $10,000 cash for the place, and she agreed to take it. She made him a deed before receiving any money, and afterwards he offered her $3,000, and told her he had taken up the Prothro *fi. fa.*, and that the sum offered was all that was coming to her. She, at the time, left the money where he placed it, in some indignation at the small amount offered her, but afterwards received it from him, by express, in Albany. Other parts of the evidence show that the Prothro *fi. fa.* amounted to about $4,000. It nowhere appears that Sims ever paid the balance due, about $3,000. Sims denies his fiduciary relationship to the widow, and says she knew of the existence of the Prothro judgment before he told her of it, and feared it had a lien on her property, and that she greatly desired to sell on that account, before he spoke to her upon the subject. He also says it was distinctly agreed that he should take up the Prothro *fi. fa.* with a portion of the money.

All this conflict of testimony was proper for the jury to pass upon. but does not present itself in such a shape as to justify this Court in setting aside the verdict. It may be remarked, however, that the testimony of I. G. Drake, a witness introduced by the defendant himself, seems to corroborate the evidence of the widow, that the $10,000 was to be paid to her, and the purchaser was to take the risk of the Prothro judgment. The answer of the defendant was waived, and was

not sworn to. During the trial, complainant was permitted to prove, over defendant's objection, the sayings of Mrs. Ferrill to Threlkeld, for the purpose of showing her unwillingness to sell prior to Sim's conversations with her about the defectiveness of her titles. One of the counsel for complainant, during the trial, made marginal marks on the defendant's answer to direct himself in argument. Defendant moved the Court to compel him to strike them out, which the Court refused. It did not appear that those marks conveyed any idea affecting the merits of the case. In the course of the argument, counsel for complainant read certain admissions of the answer to the jury as evidence of the facts contained in them, the whole answer being before the jury as pleading, but not as evidence. Counsel for the defendants objected to this, unless the whole answer were admitted as evidence before the jury. The bill was filed to set aside the sale and for an accounting. The case, in behalf of complainants, was presented to the jury in two views : 1st. That the sale was fraudulent and should be set aside. 2d. That if not fraudulent, the complainant was entitled to an account for the unpaid balance due on the purchase. The jury found a verdict setting aside the sale. Many of the assignments of error are upon the charge of the Court on the right of complainant to an accounting. The jury having rendered a verdict setting the sale aside, which we are not inclined to disturb, upon the case made, it becomes unnecessary to consider the assignments of error upon the charges applicable to the second position taken by complainant. Our judgment is:

1. The bill having charged that Mrs. Ferrill was induced to sell her land, by the representations of defectiveness in her title by Sims, her brother-in-law, and that he stood in a fiduciary relationship to her at the time, and that she would not have sold but for such representations, and he having based his defense, among other things, upon her willingness and anxiety to sell, independent of any representations made by him to her, it was competent for complainant to prove her

sayings to Threlkeld, for the purpose of showing her unwillingness to sell, just before her conversations with Sims upon the subject.

2. It was not error in the Court to refuse to compel counsel for complainant to strike out the marginal marks made by him on the answer, it not appearing that those marks conveyed any idea affecting the merits of the case.

3. The admissions made in the answer, though a sworn answer was waived, stand upon the same footing with any other admissions, and may be relied on by complainant as evidence of the fact admitted; the whole answer being before the jury, and the admissions being subject to such qualifications as may be gathered from other parts of the answer, but the jury are not bound to believe the qualifications.

4. A sale of land of a testator, or intestate by the executor or the administrator in the manner prescribed by law, where the estate is insolvent, divests the liens of judgments obtained in the lifetime of the testator or intestate, and the creditor must look to the proceeds in the hands of the representative of the estate.

5. Trust and confidence reposed in a brother-in-law by his widowed sister-in-law requires the utmost good faith and fair dealing in any contract of sale between them. A misrepresentation of the law by the brother-in-law to his sister-in-law, whereby she is led to believe her title to property held by her is invalid, and on this account she sells it to him, which sale is much to his advantage, vitiates the sale at her election, even though such misrepresentation was made in good faith. Code, 2594.

6. Where, under the foregoing relations of trust and confidence, a sale is effected between the parties during the war for Confederate money, which is to be paid in cash, and the brother-in-law applies a portion of the money to the extinguishment of a lien, supposed to rest upon the property without the widow's consent, but in accordance with what he alleges, and she denies to have been the bargain, pays the

widow a portion, and retains a large portion in his own hands, without her consent, and for which he does not clearly account, she is entitled to a decree setting aside the sale upon her accounting for the Confederate money actually received by her at a fair valuation.

Whether there was trust and confidence reposed by Mrs. Ferrill in Sims; whether, under such circumstances, he misrepresented to her the legal effect of the Prothro judgment upon her title, and whether she agreed that that judgment might be paid off with a portion of the $10,000, which Sims agreed to give her for the property, were questions for the jury. Their finding covers them and there is no ground for disturbing it. His agreement to pay cash, and his failure to do so, the money agreed to be paid being a rapidly depreciating currency, was alone, in all probability, a good ground for annulling the sale. So, at least, it has been intimated by this Court in *Smith vs. Bryan*, 34 Georgia, 64, in the body of the decision, not contained in the head notes.

7. There is evidence to sustain the verdict in this case, and we find no material error in the charge, or the refusals to charge, of the Court.

Judgment affirmed.