### 19624. SUTTON *et al. v.* McMILLAN.

HAWKINS, Justice. The petition as twice amended, brought by Mrs. Mary Geneva Sutton McMillan against Mrs. Burnie Sutton and Julian Sutton, the wife and son of Jake Sutton, deceased, who was a brother of the plaintiff, and against Mrs. Burnie Sutton as administratrix of the estate of Jake Sutton, sought the cancellation of three deeds executed by the plaintiff to her brother during his lifetime, the first dated February 1, 1944, reciting a consideration of $1 and other valuable considerations, and conveying to the grantee by warranty deed the entire interest of the plaintiff in a described tract of land containing fifty acres; the second dated September 21, 1944, reciting a consideration of $5 and other considerations, and conveying by warranty deed an undivided one-half interest in a tract of land containing 122½ acres; and the third dated August 11, 1945, reciting as consideration natural love and affection, and conveying by warranty deed a described tract of land containing 25 acres more or less, and being a portion of the 122½ acre tract described in the deed of September 21, 1944. The petition alleges that the only consideration of either of said deeds was the promise made by the grantee that he would assume with petitioner the responsibility of caring for their mother, Mrs. Rebecca Sutton, who was at that time 87 years of age and suffering from the infirmities of her age; that Jake Sutton represented to her that, in order for him to farm the tract described in the first deed, he would need something in writing to facilitate management of the land, and that

she must ratify the conveyance to him of the mother's life estate therein by signing the deed along with the mother; and believing that she must so sign the instrument in order for the life estate to be legally conveyed by the mother to Jake Sutton, she did affix her signature thereto. She alleges that the true consideration for the second deed was the agreement by Jake Sutton to build a house for himself and his family on the land therein described at a site close by the home of petitioner where she lived with her mother; that he would tend the lands conveyed on a share basis, and would help petitioner care for their mother; that she managed to pay all the taxes on this farm and to pay for considerable bulldozer operations and various other farm expenses, but her brother failed and refused to pay any part of the proceeds derived from the operation of this farm land to petitioner, failed to build a house thereon, or to help petitioner care for their mother; that the consideration for the third deed was the agreement by Jake Sutton to construct a home for his family on this tract of land. The petition further alleges, as to each of the deeds, that, at the time the said Jake Sutton made the representations aforesaid, he had the intention not to carry them out, not to build said house, and not to assist petitioner in the support and care of their mother, and made said representations with the fraudulent purpose of procuring said deeds upon the strength of said representations, knowing all the while that he would not carry out his promises; that petitioner executed the deeds relying upon the said representations and promises; was uneducated, entirely devoid of business experience, and without any relatives with whom to advise closer than the said Jake Sutton, and because of said representations and petitioner's dependence upon the advice of the said Jake Sutton, she trusted him; that he was a man of much experience in business, of good education and high intelligence, and there was a great disparity in the mental ability between petitioner and the said Jake Sutton; and that when she signed the deeds, which were prepared by the said Jake Sutton, or his agent, she was then physically and mentally sick, was worried about her mother's condition, and did not comprehend what was being done; that she had full confidence in her said brother, and trusted and relied upon his advice and guidance; that she was confined to her home because of the constant care and attention needed

by her mother; that she had no experience in business, and no means of transportation to seek legal advice, or other advice in regard to any transaction which arose, and as a consequence depended upon her said brother to advise her. She alleges that there was great inadequacy of consideration for the said deeds, the petition setting out the alleged value of the lands and of the services and obligations undertaken by Jake Sutton; and that each of said deeds should be set aside because of the fraud on his part in the procurement of the same, and the failure of the consideration therefor. She further alleges that Jake Sutton cultivated a portion of the lands, built a storehouse on a portion thereof, and cut certain timber therefrom, but failed to account to petitioner for any of the profits arising therefrom. She further alleges that, when she learned the nature of the conveyances executed by her soon after the death of her mother on June 26, 1952, and upon discovering the deception perpetrated upon her, she demanded that he return her land to her, and that he account to her for the proceeds of the crops grown on said land from 1944 to 1952, and the proceeds from the timber sold from said land; that Jake Sutton then assured his sister that he would "get it all straightened out in a few days if you won't get a lawyer," and that he reminded her so convincingly of family ties that she failed to take legal action prior to his death on July 26, 1956. She further alleged that she is now living upon the 122½ acres described in the deed of September 21, 1944, and set out as Exhibit "D" of the petition, which are contiguous to the other lands mentioned in said petition, all of said lands lying in one body; that, during the years since the execution of the several deeds mentioned, petitioner has lived in said house and has been in possession of said property, except that the said Jake Sutton handled for your petitioner the cultivation of the fields upon said lands, and the sale of timber, acting as the agent for your petitioner, and recognizing your petitioner as the owner thereof, but failing to account for the proceeds from said operation, telling her there were no profits made from said farming operation; that petitioner cultivated the fields upon the lands during the year 1956, and her tenants accounted directly to her without interference from any of the defendants; and that all such possession by petitioner was under a bona fide claim of title to the same. She further alleges that the

estate of Jake Sutton is insolvent. The petition prayed for process; that the defendants be temporarily restrained from selling or disposing of any of the assets of the estate of Jake Sutton; that a receiver be appointed to take charge of the estate; that the deeds executed by petitioner to Jake Sutton be canceled and title be decreed to be in petitioner because of the alleged fraud and failure of consideration; that petitioner have an accounting of all profits derived from the operation of said farm, and from the sale of timber; and for a judgment against the defendants and the estate of Jake Sutton for such sums as are found to be due; and for general relief.

To the petition as amended the defendants demurred generally upon the grounds: (1) because there is no equity in said petition; (2) because said petition as amended sets forth no cause of action against these defendants or either of them; (3) because, if all the facts set forth in said petition were true, they would not authorize the granting of the relief prayed for; (4) because said petition as amended would not authorize the granting of any judgment against these defendants for the alleged acts of Jake Sutton; (5) because it appears from said petition that Jake Sutton has not been dead twelve months next prior to the time this suit was filed, and therefore it would be impossible for a legal representative to have been appointed and qualified for a period of twelve months next prior to the time this suit was filed, and the plaintiff would have no right to ask for any judgment against the estate of Jake Sutton; (6) because it appears that the plaintiff has been guilty of laches and has not exercised due diligence in protecting whatever rights she may have, and it further appears that she has waited until after the death of the said Jake Sutton to bring this action, and, therefore, it would be extremely difficult for the defendants to prove exactly what did happen, due to the death of said Jake Sutton and the long delay on the part of the plaintiff in bringing this action which has rendered the ascertainment of the truth difficult; (7) because it appears that the three deeds sought to be set aside were executed more than eleven years prior to the time the present suit was brought, and that any cause of action which plaintiff would have to set aside said deeds would be barred by the statute of limitations.

The trial judge sustained the demurrers to the suit so far as it

seeks accounting, recovery of rents, mesne profits, and timber alleged to have been cut, and as prayed for in paragraph 7 of the prayer; sustained certain other special demurrers; and overruled certain special demurrers and the general demurrers to the petition. To the judgment overruling the general demurrers the defendants except. *Held:*

1. While, under Code § 113-1526, no suit to recover a debt due by the decedent shall be commenced against the administrator until the expiration of twelve months from his qualification, the trial court sustained the defendant's demurrers to so much of the plaintiff's petition as sought an accounting, and a money judgment against the estate of the decedent and his administratrix; and a suit brought against an administratrix for the purpose of canceling deeds made to the intestate is not a suit to recover a debt due by the decedent, and may be brought before the expiration of twelve months from the qualification of the administratrix. *Lanfair* v. *Thompson,* 112 *Ga.* 487 (2) (37 S. E. 717); *Tanner* v. *Hinson,* 155 *Ga.* 838 (1) (118 S. E. 680).

2. While, under the rule that one who can read must read (*Whitfield* v. *Whitfield,* 204 *Ga.* 64, 48 S. E. 2d 852, and cases there cited), the plaintiff would not be permitted to set up that she did not know the contents and nature of the deeds executed by her, she may nevertheless allege and prove that the deeds executed by her were induced by fraud, without contradicting or varying any of the terms of the writings. *Baker County Power Co.* v. *Adkins,* 169 *Ga.* 187, 188 (5) (149 S. E. 910).

3. While the fact that the plaintiff and the decedent were brother and sister does not of itself create a confidential or fiduciary relationship between them solely because they were so related (*Crawford* v. *Crawford,* 134 *Ga.* 114, 67 S. E. 673, 28 L. R. A. (NS) 353, 19 Ann. Cas. 932; *Johnson* v. *Sherrer,* 197 *Ga.* 392, 395, 29 S. E. 2d 581), where, as here, the petition alleges that the plaintiff's brother was a man of much experience in business, of good education, and high intelligence; that the petitioner was uneducated, entirely devoid of business experience, without means of transportation, and closely confined to the home in caring for their mother, and was both physically and mentally sick and worried about her condition at the time of the transactions referred to, that she had full confidence in her said brother, and had no relatives with whom to advise

closer than the said brother, and because of her said relationship and dependence upon his advice, she trusted and relied upon his guidance, and that the brother was acting as her agent in the cultivation of the farms—these allegations are sufficient to charge the existence of a confidential relationship between them requiring the utmost good faith and fair dealings on his part. Code § 37-707; *Sims* v. *Ferrill*, 45 *Ga.* 585 (5); *Forlaw* v. *Augusta Naval Stores Co.*, 124 *Ga.* 261, 262 (6) (52 S. E. 898); *Stover* v. *Atlantic Ice & Coal Corp.*, 154 *Ga.* 228 (113 S. E. 802); *Jones* v. *Hogans*, 197 *Ga.* 404, 410 (4) (29 S. E. 2d 568); *Mullins* v. *Barrett*, 204 *Ga.* 11 (48 S. E. 2d 842); *Larkins* v. *Boyd*, 205 *Ga.* 69 (52 S. E. 2d 307).

4. While the mere failure to comply with a promise is insufficient to establish an inceptive fraudulent intent (*Pantone* v. *Pantone*, 203 *Ga.* 347, 46 S. E. 2d 498; *Brinson* v. *Hester*, 185 *Ga.* 761, 196 S. E. 412), fraud will authorize equity to cancel and annul a deed no matter how solemnly executed. Code § 37-709. Where, as here, the petition alleges that the promise of the grantee was the consideration inducing execution of the deeds, and that it was made with the present intention on the part of the grantee not to comply with it, such petition sets forth a cause of action for cancellation. *Smith* v. *Merck*, 206 *Ga.* 361 (57 S. E. 2d 326); *Bucher* v. *Christopher*, 211 *Ga.* 317, 319 (85 S. E. 2d 760), and cases there cited.

5. "A breach of a covenant which is the sole consideration of an absolute deed of conveyance, coupled with insolvency of the covenantor, will authorize a decree of cancellation, although the deed contains no condition on the happening of which the estate is to determine." *Burkhalter* v. *DeLoach*, 171 *Ga.* 384 (2) (155 S. E. 513). See also *Hall* v. *Tyson*, 160 *Ga.* 381 (128 S. E. 187).

6. "'Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence.' Code § 37-706. 'Great inadequacy of consideration, joined with great disparity of mental ability in contracting a bargain may justify equity in setting aside a sale or other contract.' Code § 37-710. Under the latter principle, a deed may be set aside in equity, on proof of the two elements stated, 'without proof of anything else' as to fraud." *Stow* v. *Hargrove*, 203 *Ga.* 735 (1) (48 S. E. 2d 454). See also *Fuller* v. *Stone*, 207 *Ga.* 355 (1) (61 S. E. 2d 467).

7. The petition in this case alleges that the petitioner has been living upon and in peaceable possession under a claim of ownership of the premises involved since the execution of the deeds sought to be set aside and up until the filing of the petition. Neither laches nor the statute of limitations will run against one in peaceable possession of property under a claim of ownership for delay in resorting to a court of equity to establish his rights. *Shirley* v. *Shirley,* 209 *Ga.* 366 (72 S. E. 2d 719); *Toombs* v. *Hilliard,* 209 *Ga.* 755, 756 (5a) (75 S. E. 2d 801); *Richards* v. *Richards,* 209 *Ga.* 839, 843 (3) (76 S. E. 2d 492).

8. Applying the foregoing principles of law to the allegations of the amended petition in this case, the trial judge did not err in overruling the general demurrers thereto.

*Judgment affirmed. All the Justices concur.*

ARGUED FEBRUARY 11, 1957—DECIDED MARCH 12, 1957.

*L. J. Courson, J. C. McDonald, McDonald & McDonald,* for plaintiffs in error.

*Fred L. Belcher, Elsie H. Griner, Edward Parrish, McCall & Griffis,* contra.