A10A0049. NASH et al. v. ROBERTS RIDGE FUNDING, LLC.
(699 SE2d 100)

BERNES, Judge.

Roberts Ridge Funding, LLC ("RR Funding") filed suit against Benjamin P. Nash, Jr., and Nash Land Company, LLC, alleging claims of inceptive fraud, rescission for nonperformance, fraud, and breach of contract arising out of its investment in a failed land development. RR Funding filed a motion for partial summary judgment as to the inceptive fraud claim, which the trial court granted. RR Funding

YALE LAW LIBRARY

then filed a motion for a supersedeas bond, which the trial court also granted. The Nash defendants appeal both of the trial court's rulings, contending that the evidence failed to establish the claim for inceptive fraud and that the order for a supersedeas bond was unauthorized since no final judgment had been entered in the case. We agree that summary judgment on the claim for inceptive fraud was not warranted; therefore, we reverse the judgment. The Nash defendants' appeal as to the supersedeas bond is moot.

1. The Nash defendants first contend that the trial court erred in granting summary judgment in favor of RR Funding on the inceptive fraud claim.

> On appeal of a grant of summary judgment, we review the evidence de novo and determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the party was entitled to judgment as a matter of law. Summary judgment is appropriate when the court, viewing all the facts and evidence and reasonable inferences from those facts in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case.

(Citations and punctuation omitted.) *Krogh v. Pargar, LLC*, 277 Ga. App. 35 (625 SE2d 435) (2005).

This case arises out of a failed land development project known as "Roberts Ridge." The evidence shows that Charles and Nell Veal were the owners of approximately 43 acres of land in Gwinnett County. The Veals entered into an agreement with the Nash defendants and another individual, Phillip Todd Pendley, for development of the land. The Veals were paid between $25,000 and $70,000 for use of their property, and they were to receive additional funds from profits generated by the project. The Veals, Nash Land, and Pendley organized the limited liability company, Roberts Ridge, LLC, and entered into an Operating Agreement to carry out the project. Under the terms of the Roberts Ridge Operating Agreement, the Veals owned a 50% membership interest, while Nash Land and Pendley each owned a 25% membership interest in the company. In addition, the Roberts Ridge Operating Agreement contained an article governing the disposition of membership interests, which provided in pertinent part as follows:

> 1. PROHIBITIONS. . . . No member may in any way alienate all or part of his membership interest in the Company be it through assignment, conveyance, encumbrance or sale,

without the prior written consent of the majority of the remaining members. . . .

2. PERMISSIONS. A [m]ember may assign his membership interest in the Company subject to the provisions of this article. The assignment of [a] membership interest does not in itself entitle the assignee to participate in the management of the Company nor is the assignee entitled to become a member of the Company. The assignee is not a substitute member but only an assignee of [a] membership interest and as such, is entitled to receive the income and distributions the assigning member would have otherwise received.

3. SUBSTITUTE MEMBER. Only upon the unanimous consent of the remaining members may an assignee of [a] membership interest become a substitute member and be entitled to all rights associated with the assignor. Upon such admission, the substitute member is subject to all restrictions and liabilities of a [m]ember.

Nash Land and Pendley later approached Keith Pugh, the managing member of RR Funding, about becoming an investor in the Roberts Ridge project. Following their negotiations, RR Funding, Nash Land, and Pendley formed a new limited liability company, Roberts Ridge Developers, LLC ("RR Developers"). On January 18, 2006, they executed an RR Developers Operating Agreement, providing that RR Funding owned a 50% membership interest, and Nash Land and Pendley each owned 25% membership interests in RR Developers. The RR Developers Operating Agreement further provided for initial capital contributions, which required RR Funding to contribute $1,000,500 and required Nash Land and Pendley to each contribute their 25% interests in Roberts Ridge, LLC. The Operating Agreement also attached and incorporated a Term Sheet, which required Nash Land and Pendley "to contribute their respective interests in Phase I — Roberts Ridge LLC . . . to [RR Developers] effective with [RR Funding's] funding." In addition, the Operating Agreement attached a written consent allegedly executed by each of the members of Roberts Ridge, LLC, approving the transfer of Nash Land's and Pendley's 25% interests, rights and obligations to RR Developers, effective January 9, 2006.[1] The written consent further approved the appointment of RR Developers as the manag-

---

[1] During the course of the litigation, the Veals signed affidavits denying that they had executed the written consents. In its motion for partial summary judgment, RR Funding acknowledged that the issue of whether the written consent had been validly executed raised a question of fact. RR Funding, therefore, did not rely upon the Veals' claim in support of the motion.

ing member and operating manager to replace Pendley and Nash, and provided that RR Developers was to assume the rights and obligations of Nash Land and Pendley as reflected in the Roberts Ridge Operating Agreement.

Following execution of the RR Developers Operating Agreement, RR Funding paid its $1 million capital contribution. The funds were distributed to Nash Land and Pendley, with each receiving $500,000 for use in the project. Nash Land also obtained a $2.3 million bank loan to fund the project.

The project subsequently failed. The costs for the project exceeded the amounts budgeted and none of the parties was willing to make additional financial contributions to complete the project. Eventually, the bank foreclosed on the property.

RR Funding filed the instant lawsuit against Nash and Nash Land,[2] seeking to rescind the RR Developers Operating Agreement and to recover its $1 million investment in the project. RR Funding alleged that the Nash defendants had committed inceptive fraud by failing to transfer Nash Land's membership interest in Roberts Ridge, LLC, as contemplated by their agreement. Specifically, RR Funding alleged that Nash Land had misrepresented that RR Funding would receive Nash Land's 25% membership interest in Roberts Ridge, LLC in exchange for its $1 million contribution to the project; that Nash Land had no intention of making the transfer at the time that it made the misrepresentation; that RR Funding was induced and reasonably relied upon the misrepresentation when it paid the contribution to fund the project; that Nash Land failed to make the transfer of the membership interest as required; and that RR Funding received nothing in return for its $1 million contribution.

RR Funding filed a motion for partial summary judgment on the inceptive fraud claim. The trial court granted the motion, finding that the RR Developers Operating Agreement unambiguously required Nash Land to transfer its membership interest in Roberts Ridge, LLC to RR Funding and that Nash had given deposition testimony conceding that no such interest had been transferred. We disagree with the trial court's findings and analysis.

To establish a claim for fraud in the inducement, or inceptive fraud to enter into a contract, a plaintiff must prove both that the defendant failed to perform a promised act and that the defendant had no intention of performing when the promise was made. See

---

[2] RR Funding's lawsuit also named as defendants Pendley and Benjamin P. Nash, Sr., as Trustee for the Benjamin P. Nash Trust. These defendants, however, are not parties to this appeal.

*Cowart v. Gay*, 223 Ga. 635, 636-637 (1) (157 SE2d 466) (1967). Evidence showing nothing more than the parties' disagreement regarding the interpretation of a contract's terms is inadequate to support an inceptive fraud claim. See *Bridges v. Bridges*, 216 Ga. 808, 810-811 (1) (120 SE2d 180) (1961); *Equifax v. 1600 Peachtree, LLC*, 268 Ga. App. 186, 194-196 (601 SE2d 519) (2004).

In support of its claim, RR Funding relies upon the terms set forth in RR Developers Operating Agreement, which required Nash Land to make an initial capital contribution of its "25% Interest in Roberts Ridge LLC," and the Term Sheet attached and incorporated therein, which required Nash Land "to contribute [its] respective interest[ ] in Phase I — Roberts Ridge LLC . . . to [RR Developers]." Significantly, the Roberts Ridge LLC Operating Agreement contained provisions governing the manner in which an interest in its company could be effectively conveyed. In this regard, the Roberts Ridge LLC Operating Agreement distinguished between an assignment of a limited membership interest, which only provided for the assignee's right to receive income and distributions from the company ("economic interest"), and a substitute membership interest, which provided for the assignee's entitlement to all rights, restrictions, and liabilities of a membership interest ("membership interest"). In setting forth the transfer requirement, however, the RR Developers Operating Agreement failed to specify which type of interest was to be transferred. To the extent that the transfer terms of the RR Developers Operating Agreement and Term Sheet were not specific, they were ambiguous — i.e., subject to more than one reasonable construction.[3] See generally *RLI Ins. Co. v. Highlands on Ponce*, 280 Ga. App. 798, 801 (1) (635 SE2d 168) (2006). See also *Block v. Peter*, 63 Ga. 260, 262 (1879); *Raymond Rowe Furniture Co. v. Simms*, 84 Ga. App. 184, 186 (65 SE2d 830) (1951).

Pretermitting whether under the rules of contract construction[4] the ambiguous transfer terms ultimately could be resolved in favor of RR Funding, the evidence simply reflected the parties' disagreement

---

[3] Although the trial court concluded that the transfer terms of the RR Developer's Operating Agreement were unambiguous, it considered parol evidence, including the parties' depositions and a prior draft of the operating agreement, relative to the meaning of the terms. But, "[p]arol evidence is only admissible when any ambiguity cannot be resolved through the application of the rules of contract construction." (Citation and punctuation omitted.) *IH Riverdale v. McChesney Capital Partners*, 292 Ga. App. 841, 844, n. 7 (666 SE2d 8) (2008). "Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties." (Punctuation and footnote omitted.) Id. at 844-845. See also *Porter Communications Co. v. SouthTrust Bank*, 268 Ga. App. 29, 32 (2) (601 SE2d 422) (2004). We nevertheless conclude that the transfer terms of the agreement were ambiguous, and thus, the parties' parol evidence could be considered in efforts to resolve the ambiguity. See *Krogh*, 277 Ga. App. at 39-40 (2).

[4] See OCGA § 13-2-2.

regarding the type of transfer intended. The parties' conflicting interpretations regarding the transfer terms did not establish that the Nash defendants lacked a present intent to perform at the time that the agreement was signed.[5] See *Bridges*, 216 Ga. at 810-811 (1); *Equifax*, 268 Ga. App. at 194-196. Because the record evidence did not plainly and indisputably establish the claim for inceptive fraud, the trial court erred in granting RR Funding's motion for partial summary judgment. See id.

2. The Nash defendants also appeal the trial court's order setting a supersedeas bond in the amount of $500,000 for their appeal of the trial court's grant of the motion for partial summary judgment. That appeal now having been decided, the issue as to the propriety of the supersedeas bond is moot. See *Transp. Ins. Co. v. Piedmont Constr. Group*, 301 Ga. App. 17, 26 (686 SE2d 824) (2009); *Almonte v. West Ashley Toyota*, 281 Ga. App. 808, 810 (637 SE2d 755) (2006).

*Judgment reversed. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED JULY 9, 2010.

*Richard J. Storrs*, for appellants.

*Morris, Manning & Martin, Simon R. Malko, Stephen M. Vaughn, Todd Pendley*, for appellee.

---

[5] RR Funding also questioned whether a transfer of any type of interest had been effectuated. According to the Term Sheet attached to the RR Developers Operating Agreement, the transfer of Nash Land's interest was to be "effective with [RR Funding's] funding." Pugh testified that the only documentation transferring Nash Land's interest was the Developer's Operating Agreement, the term sheet, and the written consent from the other Roberts Ridge, LLC members; he believed that once the Developers Operating Agreement was executed, the transfer of Nash Land's interest was effectuated. It is undisputed that the agreements and written consent did not refer to or require any additional documentation to complete the transfer. Nash did not dispute that a transfer had occurred; he only challenged the type of interest that was subject to the transfer.