**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**June 7, 2012**

# In the Court of Appeals of Georgia

A12A0749. SLAICK v. ARNOLD.

PHIPPS, Presiding Judge.

Emmett J. Arnold, as administrator of the estate of Katie Day, filed a complaint for declaratory judgment against Nancy Slaick, to, among other things, establish the estate's title to real property or have declared void a deed Day had executed conveying the property to Slaick. Following a bench trial, the trial court issued an order declaring the deed from Day to Slaick "void as it lacks valid and valuable consideration."

This is the second appearance of this case before this court.[1] In the prior appeal, we reversed the trial court's judgment that the deed was void because it lacked

---

[1] See *Slaick v. Arnold*, 307 Ga. App. 410 (705 SE2d 206) (2010).

consideration.[2] We remanded the case for the trial court to make findings with regard to the issues of fraud and after-acquired title, which Arnold had raised in his complaint but upon which the trial court had not ruled.[3]

On remand, the trial court ruled that legal title to the property at issue did not pass solely to Slaick (as opposed to Slaick and other individuals) because the deed had been procured by inceptive fraud. The court ordered the deed cancelled. The trial court again did not rule on the issue of after-acquired title.[4] Slaick appeals.[5] For the reasons that follow, we reverse.

"The [trial] court is the trier of fact in a bench trial, and its findings will be upheld on appeal if there is any evidence to support them. The plain legal error

---

[2] Id. at 412 (1).

[3] Id. at 413 (3).

[4] The after-acquired title issue involves Arnold's allegation that Day's deed to Slaick was ineffective because Day acquired title to the property after she had executed the deed to Slaick, an allegation which Slaick disputes.

[5] We note that neither party appeals from the trial court's failure to rule upon the issue of after-acquired title, so we do not address that aspect of the trial court's judgment.

standard of review applies where the appellate court determines that the issue was of law, not fact."[6]

The facts in this case, as set forth in our prior opinion, are as follows:

[T]he record shows that the real property at issue in this case was previously owned by Cora Belle Dorsey, who died on September 4, 1989. In her will, Dorsey devised the property at issue to Day and Slaick "share and share alike." Slaick, as the executor of Dorsey's will, filed an assent to the devise on August 2, 1991 "so that full fee-simple title thereto is vested in [Day and Slaick] as provided in [Dorsey's] will."

On April 20, 1990, before Slaick's devise from Dorsey's estate to Day and Slaick, Day and Slaick went to an attorney's office for the purpose of executing reciprocal deeds for the property at issue that reserved a life estate for each grantor. According to Slaick, "Aunt Belle wanted her to fix this here so that if I died first it went to mother, but if she died first it went to me. And reserve for herself a life estate. She told my mother that. . . . And it had been over six months and I hadn't even mentioned it to my mother and she mentioned it to me, we need to go and do what Cora Belle wanted us to do. . . ."

The deed from Day to Slaick provides (that Day): [F]or and in consideration of LOVE AND AFFECTION AND OTHER GOOD AND VALUABLE CONSIDERATION, the receipt of which is hereby

---

[6] *Crowell v. Williams*, 273 Ga. App. 676 (1) (615 SE2d 797) (2005) (citation and punctuation omitted).

3

acknowledged, has bargained, sold and does by these presents bargain, sell, remise, release, and forever quit-claim to [Slaick], her heirs and assigns, all the right, title, interest, claim or demand which [Day] has or may have had or may acquire in the future in and to [the property at issue].

. . .

Day "expressly reserves for herself a life estate in and to the aforesaid lands, it is the intent of the grantor to deed a remainder interest only."

It is undisputed that the reciprocal deed from Slaick to Day was never recorded and cannot be located.

In Day's (1999) will, she devised her half interest "in any real property owned jointly by me and [Slaick]" to her four other children. She then specifically identified the property at issue in this suit. Day died on March 27, 2006.[7]

The trial court, in its order, stated the following facts in support of its determination that the deed from Day to Slaick shall be cancelled and annulled:

In the present case, Ms. Day was the 72-year old mother of [Slaick]. Secondly, [Slaick] was the past administrator of Ms. Dorsey's estate, before her removal for mishandling the estate. Further, Ms. Slaick hired

---

[7] *Slaick*, supra at 410-411.

the attorney who was to draft and record the reciprocal deeds between the parties, and Ms. Day executed her deed after relying on the promise that both her and her daughter were entering reciprocal deeds to the property at issue. Though Ms. Slaick['s] deed [from Day] was recorded, Ms. Day's deed [from Slaick] mysteriously disappeared and was never recorded.

1. As an initial matter, we address Slaick's contention that the trial court erred in allowing Arnold, following remand of the case, to amend his complaint to allege a claim for fraud. We note that in the appellate record there is no order issued by the trial court allowing the complaint to be so amended.[8] Nor did the trial court in its order on Arnold's complaint mention any consideration of the complaint's purported amendment, which states essentially the same allegations concerning that claim as the allegations stated in the complaint. Thus, Slaick has not shown error by the record.[9]

2. Slaick correctly asserts that the trial court erred by cancelling the deed due to fraud. When the failure to perform a promised act is coupled with the present

---

[8] See generally OCGA § 9-11-15 (regarding amendment of pleadings).

[9] *Fine v. Fine*, 281 Ga. 850, 852 (2) (642 SE2d 698) (2007) (it is the duty of the party asserting error to show it by the record); *Phan v. Andre & Blaustein*, 309 Ga. App. 191, 193-194, n. 8 (709 SE2d 863) (2011).

5

intention not to perform, fraud, in the legal sense, is present.[10] "This is known as inceptive fraud,[11] and is sufficient to support an action for cancellation of a written instrument."[12] Notwithstanding, "the mere failure to comply with a promise is insufficient to establish an inceptive fraudulent intent."[13]

> Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence. Great inadequacy of consideration, joined with great disparity of mental ability in contracting a bargain, may justify equity in setting aside a sale or other contract. Under the latter principle, a deed may be set aside in equity, on proof of the two elements stated, without proof of anything else as to fraud.[14]

---

[10] *Futch v. Lowndes County*, 297 Ga. App. 308, 310-311 (1) (676 SE2d 892) (2009); *Lanning v. Sockwell*, 137 Ga. App. 479, 482-483 (2) (224 SE2d 119) (1976).

[11]*Lanning*, supra; *Davidson Mineral Properties v. Baird*, 260 Ga. 75, 78 (5) (390 SE2d 33) (1990); *Nash v. Roberts Ridge Funding*, 305 Ga. App. 113, 116 (1) (699 SE2d 100) (2010).

[12] *Lanning*, supra at 483 (2) (citations omitted); *Nixon v. Brown*, 223 Ga. 579, 582 (2) (157 SE2d 20) (1967).

[13] *Sutton v. McMillan*, 213 Ga. 90, 95 (4) (97 SE2d 139) (1957) (citations omitted); *Nixon*, supra.

[14] *Top Quality Homes v. Jackson*, 231 Ga. 844, 846 (204 SE2d 600) (1974) (citations and punctuation omitted); *Sutton*, supra at 95 (6); OCGA § § 23-2-2, 23-2-57.

"Proof of one without the other is not sufficient."[15] "With regard to a disparity of mental ability, weakness of mind not amounting to imbecility is not sufficient mental incapacity to justify setting a deed aside."[16]

The mental competency to make a deed and the great disparity of mental ability in contracting a bargain are related principles.[17] The Supreme Court of Georgia, in *Strong v. Holden*,[18] determined that a testator did not lack the requisite mental testamentary capacity to execute a will "simply because she was elderly, hospitalized, physically weak, vomiting and taking prescribed medications," where the direct evidence from the propounder of the will showed that the testator possessed testamentary capacity.[19]

---

[15] *Guillebeau v. Yeargin*, 254 Ga. 490, 492 (2) (330 SE2d 585) (1985) (citation omitted); *Bailey v. Williams*, 215 Ga. 395, 397 (1) (110 SE2d 673) (1959) (both a great inadequacy of consideration and a great disparity of mental ability in contracting a bargain must exist to justify equity in setting aside a sale or other contract).

[16] *Thomas v. Garrett*, 265 Ga. 395, 398 (3) (456 SE2d 573) (1995) (citation and punctuation omitted); *Coile v. Gamble*, 270 Ga. 521, 522 (2) (510 SE2d 828) (1999); *Lockridge v. Smith*, 298 Ga. App. 428 (1) (680 SE2d 501) (2009).

[17] *Top Quality Homes*, supra.

[18] 287 Ga. 482 (697 SE2d 189) (2010).

[19] Id. at 484 (1).

It is undisputed that there was a great inadequacy of consideration in Day's conveyance to Slaick of the property at issue. The record reflects an absence of the deed Slaick testified she executed to convey to Day a reciprocal interest in the property, as Day had executed and conveyed to her. But the record is devoid of any evidence showing between Day and Slaick a great disparity of mental ability in contracting a bargain. Arnold points out in his appellate brief that "[a]t the time [the deed was executed], the elderly Ms. Day, according to Ms. Slaick, 'couldn't even keep a checkbook.'" But, in context, Slaick's comment was referring to Day's abilities in 1996, when Day had petitioned to have Slaick removed as administrator of Dorsey's estate; and not 1990, when Day executed the deed at issue.

The only evidence in the record concerning Day's mental capacity around the time she executed the deed comes from the deposition testimony of Slaick, who stated that "[a]t that time, [Day] was in excellent health." No witnesses testified concerning Day's mental capacity to contract around the time the deed was executed.[20] There was no evidence that Day was uneducated or lacked the ability to read or write, and that

[20] See *Godwin v. Godwin*, 265 Ga. 891-892 (1) (463 SE2d 685) (1995); *Lockridge*, supra (to determine the issue of mental competency at the time a deed was executed, a court can consider evidence as to the grantor's competency for a reasonable period of time before and after the deed was executed).

Slaick, in contrast, was an experienced businesswoman.[21] Regarding herself, Slaick testified that she "wouldn't know the first phase about how to record something,"and that she assumed the attorneys had recorded the deed she had executed. And although there was some evidence in the record as to Day's ill physical health, that evidence failed to show any mental disparity between Day and Slaick.[22]

Accordingly, as there was no evidence in the record to support the trial court's finding of inceptive fraud, the judgment must be reversed.[23]

*Judgment reversed. Ellington, C. J., and Dillard, J., concur.*

---

[21] See *Top Quality Homes*, supra at 846.

[22] See *Titshaw v. Carnes*, 224 Ga. 57, 60 (2) (a) (159 SE2d 420) (1968); *Strong*, supra.

[23] *Godwin*, supra; *Top Quality Homes,* supra; *Sutton*, supra; *Titshaw*, supra; *Nixon*, supra; *Lanning*, supra at 482-483 (2).