47115.   HEARD v. JOHNSON.

ARGUED APRIL 5, 1972—DECIDED APRIL 24, 1972—
REHEARING DENIED MAY 5, 1972—

*Daniel C. B. Levy, Charlie Franco,* for appellant.
*Greer & Murray, Frank J. Klosik, Jr.,* for appellee.

DEEN, Judge. This case was decided on the pleadings, release, uncashed draft, deposition of plaintiff and affidavit of the insurance adjuster. The affidavit states that the adjuster prepared and the plaintiff signed the release; that he tendered plaintiff a draft for $330 with the statement that it was a release of all claims, and that he made no other representation concerning the release and draft. The plaintiff's deposition on cross examination shows her to be a simple and ungrammatical person with a sixth grade education. Her uncontradicted testimony is to the effect that she received a head blow, neck and shoulder whiplash and spinal injury in the collision; that she went to the doctor as soon as possible; that for the next month except for one or more trips to Grady Hospital she remained in bed and took "nerve medicine" and other drugs; that Barker continually insisted that he had to get the money for his car and that she had to go with him to the adjuster's office before they

would give it to him; that nothing was said about payment to her and she went down because Barker kept pestering her with no intention of discussing any claim for herself at that time as she was too "shook up"; that she took the nerve medicine before she left and while in the office; that she was terribly upset because Barker kept talking loud and pounding on the table and insisting he wanted his money and the adjuster said very little to her; that she understood that for Barker to get his money she had to sign some papers and she did so, but she was hurting and crying and her daughter then helped her to the bathroom. When she returned the adjuster gave her the draft. She asked what it was for. "And James just kept on going through all of this and I got upset and if he said it was for me, I didn't understand what he meant, you know, because I thought at the time, just like I am saying, I thought I was out there for James' sake you know. That's what I thought at all times. I was there to just help get James' car fixed, so he would let me alone, so I could get a little ease in the bed." At another point she deposed: "Well, after he wrote the check out I remember asking him, I said well, why did you give me a check? He said, well, this is for the benefit of yourself for, because you was hurt in this accident. And I said, well, what will I do if I don't get out of bed in the six weeks and be able to go back to work. And he said, well, I don't have nothing to do with that, that will be your responsibility!" The plaintiff described her physical condition as: "Most of the time, I felt, you know, kind of faintified, you know, like I was going to pass out."

She showed the check to a cousin that evening, and when the latter suggested "there must be something behind that" she went to a lawyer, turning the draft over to him. It remained uncashed. This action was filed on July 8.

The facts surrounding the signing of the release raise questions which may not be decided on summary judgment. *Jackson v. Rich,* 227 Ga. 149 (179 SE2d 256). To the same effect see also *Branan v. LaGrange Truck Lines,* 94 Ga. App. 829 (96 SE2d 364); *Southeastern Greyhound Lines v.*

*Fisher,* 72 Ga. App. 717 (34 SE2d 906). The evidence here suggests only that the plaintiff got up out of a sick bed against the physician's instructions while under the influence of tranquilizers and accompanied the owner of the vehicle to the adjuster's office for the purpose of helping him obtain money with which to repair his car; that she made no claim and requested no settlement in her own behalf; that practically all of the conversation was directed toward the amount James Barker should receive, over which question there was a loud and noisy argument; that she was upset and physically nauseated; that whether or not she was physically capable of understanding the release at the time she did not in fact know what she was signing; that when she returned from the bathroom and was handed a check she questioned what it was for but the release still was not explained to her, and that she did not cash the check and immediately thereafter sought out a lawyer to advise her. Under these circumstances the case was not subject to summary disposition.

The trial court erred in granting the motion for summary judgment.

*Judgment reversed. Clark, J., concurs. Eberhardt, P. J., concurs in the judgment only.*