48154, 48155. WALSH et al. v. CAMPBELL (two cases).


ARGUED MAY 7, 1973 — DECIDED OCTOBER 12, 1973 —
REHEARING DENIED NOVEMBER 8, 1973 —

*Johnson, Harper, Daniel, Ward & Stanfield, William W. Daniel,* for appellants.

*Powell, Goldstein, Frazer & Murphy, Jerry B. Blackstock, Robert M. Travis, Robert W. Patrick,* for appellee.

HALL, Presiding Judge. These two appeals are brought by Mr. and Mrs. Walsh, plaintiffs below, whom we will hereafter refer to as "appellants," from the award of summary judgment to defendant State Farm Mutual Automobile Insurance Company. They present primarily the question whether on these facts a release executed shortly after an auto collision will bar appellants' subsequent tort actions. We hold that it does, and affirm.

The record shows that on Saturday, October 17, 1970, the auto driven by one Danny Joe Campbell struck the rear of that owned and occupied by appellants. Mrs. Walsh experienced pain in her neck in the moments after the collision. On October 18, appellants learned that Campbell had no insurance, and on the 19th they notified State Farm, which was their own uninsured motorist

insurance carrier. Also on the 19th Mrs. Walsh was treated by a doctor whom she had previously consulted by telephone, and who on the 19th prescribed a cervical collar and medication for pain and nerves. On October 20, Mr. Neff, the State Farm adjuster, telephoned Mrs. Walsh about the collision, and, in the words of the Walshes on this appeal, "At that time Mrs. Walsh was not aware of the severe personal injuries from the collision that were to subsequently manifest themselves, so she only informed Mr. Neff of the damage to the automobile and the time that her husband had lost from his employment. At that time Mr. Neff stated to Mrs. Walsh that State Farm would pay them $107.95 for damages to their automobile and for her husband's initial loss of time from his employment, but that was the maximum amount that the uninsured motorist provision of the State Farm policy could pay. Mr. Neff told Mrs. Walsh and her husband that they would have to sign a paper to authorize State Farm to recover the $107.95 from Danny Joe Campbell and that he was mailing this form to Mr. and Mrs. Walsh. That Mr. and Mrs. Walsh signed this form and the adjuster, Mr. Neff, came to their home and left a check for $107.95 in return for the signed form." (Citations to record omitted.)

Appellants allege that they did not read the pertinent provision of the policy, which was at all relevant times in their possession, nor did they read the release before executing it at their home before the adjuster arrived to pick it up. Both appellants are now and were at all pertinent times able to read and write.

Subsequent to these events, Mrs. Walsh continued to have difficulties with her neck, requiring costly treatment and finally surgery. Eventually an attorney was consulted, the release was attempted to be repudiated, and the settlement amount plus interest was tendered back to State Farm which declined to accept it.

The Walshes then brought these companion suits against Campbell. Mrs. Walsh claimed damages for personal injury, and Mr. Walsh sought to recover for medical expenses and loss of consortium. State Farm was served by duplicate original, and answered the suit through its counsel, as did defendant Campbell. State Farm pleaded the release in bar of the suits.

In the trial court, State Farm was granted summary judgment on the basis of the release, and this appeal followed.

Appellants' contentions on appeal are presented in loose formulation but we understand them to argue that the court below erred in giving effect to the release because in obtaining it State

Farm misrepresented the coverage of the uninsured motorist provision of appellants' policy, and in failing to read it for themselves appellants were justified by a confidential or fiduciary relationship which they enjoyed with State Farm by virtue of having done business for some years with that company and by virtue of State Farm's reassuring advertising implying that it would take care of its insureds. They urge that the signing of the release was prompted by the adjuster's misrepresentation that it was merely a formality allowing State Farm to recover over against Campbell, and by their own unilateral mistake of a material fact concerning the extent of Mrs. Walsh's injuries. They additionally argue that Mrs. Walsh should not be barred by the release because in payment for her execution of it she received no recompense for personal injuries.

State Farm poses a jurisdictional question; we will consider this question first.

State Farm argues that because plaintiffs seek to evade the operation of the release, their suits necessarily ask equitable relief and therefore fall within the exclusive jurisdiction of the Georgia Supreme Court. We disagree, finding that these are not equity cases though consideration of equitable principles is involved. We assert jurisdiction of the appeals.

Though equity has concurrent jurisdiction with law in all cases of fraud except those in wills, Code § 37-701, unless some substantial equitable relief is sought, equity is reluctant to assume jurisdiction. Generally a suit for affirmative equitable relief requires for its maintenance actual fraud, 12 Encyclopedia of Georgia Law, Fraud and Deceit, § 10 (1967), and here, we have allegations not of actual fraud but of constructive fraud, see Code §§ 37-702 and 37-703. Though plaintiffs do ask the court in effect to nullify the release, the means of doing so would merely be by refusing to enforce it, and an instrument may be voided by an action at law. For example, in a contract damage suit when defendant showed impossibility of performance and requested application of the doctrine of equitable rescission, the Georgia Supreme Court ruled that no affirmative equitable relief was requested because defendants sought only to be dismissed with costs. Ruling that it was without jurisdiction, the Supreme Court transferred the appeal to this court. *Regents of the Univ. System of Ga. v. Carroll,* 203 Ga. 292 (46 SE2d 496); cf. *Douglas v. Currie Ford Co.,* 103 Ga. App. 75 (2) (118 SE2d 586); *Nichols v. Williams Pontiac, Inc.,* 95 Ga. App. 752 (98 SE2d 659).

.

A procedural setting much like the present one appears in *Turner v. Kraft,* 95 Ga. App. 543 (98 SE2d 204). Plaintiff sued for auto collision damages; defendant pleaded a release as an accord and satisfaction; plaintiff responded that the release was the product of a mutual mistake of fact and ought not to be enforced. This court held on appeal that the court below, even though without equity jurisdiction, had "authority to entertain equitable defenses," *id.* at 551, thus treating a response by plaintiff to defendants' plea in bar as raising an equitable "defense" only and not constituting a case for the equity courts. Our jurisdiction is commonly exercised on such appeals. See, e. g., *Heard v. Johnson,* 126 Ga. App. 222 (190 SE2d 455); *Jordan v. Belvin,* 57 Ga. App. 719 (196 SE 132).

On the merits of the release issue, plaintiffs assert that two items were misrepresented to them: the coverage of their policy and the contents of the release — neither of which they read for themselves. Under Georgia law, absent special circumstances plaintiffs may attack a contract in a court of law on grounds of fraud only where they have exercised due diligence in protecting themselves, instead of merely relying blindly upon representations of another later claimed to have been false. *American Food Services, Inc. v. Goldsmith,* 121 Ga. App. 686 (175 SE2d 57). See *Lawton v. Byck,* 217 Ga. 676 (124 SE2d 369); *Browning v. Richardson,* 181 Ga. 413 (182 SE 516); *Lariscy v. Hill,* 117 Ga. App. 152 (159 SE2d 443); *Mangham v. Hotel & Restaurant Supply Co.,* 107 Ga. App. 619 (131 SE2d 74). The same rule requiring diligence applies where plaintiff alleges no fraud but a mutual mistake of fact, Code § 20-308, and it applies in the specific situation in which plaintiff claims that what was misrepresented to him was the contents of a contract which he could have read for himself but failed to read. *Mangham v. Hotel & Restaurant Supply Co.,* supra. "Where from all the allegations of the pleader it appears that he showed no diligence in ascertaining the nature of the contract he signed, neither a court of law nor equity will relieve him of the consequences." *Id.*

This court has no choice but to apply this rule. See *Cole v. Cates,* 113 Ga. App. 540 (149 SE2d 165).

Though claiming that the agent falsely represented that $107.95 was the maximum amount payable, appellants in their brief (quoted above) state here that Mrs. Walsh asked Mr. Neff for payment under the policy provision *only* of an amount for auto repairs and her husband's lost time from work. It was in response to this request that he quoted the figure $107.95. On her deposition,

Mrs. Walsh was asked whether she had ever pressed Mr. Neff on the question of whether that was all he would pay, or whether she had ever demanded more. Her answers were negative. Review of the record fails to uncover any indication that either of the appellants ever even asked whether personal injuries were compensable to any extent under the uninsured motorist provision of their policy.

Appellants have cited two cases in which it was held error to grant summary judgment for defendants where there are allegations that a release was procured by fraud. But we find special circumstances present in those cases, not present here. *Jackson v. Rich,* 227 Ga. 149 (179 SE2d 256) (allegations of great disparity of mental ability between the parties); *Heard v. Johnson,* 126 Ga. App. 222, supra (evidence of plaintiff's disorientation and sickness at the time of signing the release).

Plaintiffs could have studied their own policy, and chose not to do so. They could have scrutinized the release and learned that it was more than merely an instrument allowing State Farm to seek recovery against Campbell. They chose not to do so. Under the decisions and reasoning set out above, they may not now make the opposite choice, unless they had some specific right to rely upon the adjuster's representations without using diligence in their own behalf. To meet this point, the Walshes argue that they enjoyed a confidential relationship with State Farm.

When a confidential relationship exists between the parties, a greater degree of reliance and a lesser degree of diligence in one's behalf are required of a plaintiff. However, there is no Georgia statute establishing that an accident and liability insurer occupies a fiduciary relationship to its insured, and the courts of this state have made no such rule. Rather the opposite is true.

A confidential relationship, as defined in Code § 37-707, exists where one party is able "to exercise a controlling influence over the will, conduct, and interest of another; or where, from similar relation of mutual confidence the law requires the utmost good faith. . ." The posture of an insured making a claim against his own insurer does not fall within this definition but is one of antagonistic interests.

This court requested supplemental briefs from the parties on the question whether there exists a confidential or fiduciary relationship between an insured and the insurer carrying his uninsured motorist coverage. Neither party has been able to cite any case on this point from any jurisdiction. We note the general

rule that the mere insured-insurer relationship will not place fiduciary responsibilities upon the insurer. Moses v. Manufacturers Life Insurance Co., 298 FSupp. 321, 323 (D. S. C. 1968); aff'd 407 F2d 1142 (4th Cir.); cert. den. 396 U. S. 827. See 16 Appleman, Insurance Law & Practice, § 8867 (1968 Supp. 1973).

In line with the general rule, and closely analogous to the facts here is *Clinton v. State Farm Mut. Auto. Ins. Co.,* 110 Ga. App. 417 (138 SE2d 687), which we feel decides the question against the Walshes. In *Clinton,* this court held that there was no confidential relationship between State Farm and its insured who claimed under the medical pay portion of his own policy. We conclude from the same reasoning that there is no confidential relationship between State Farm and one who claims under the uninsured motorist provision of his own policy, as such a claimant necessarily takes a position antagonistic to the monetary interest of the insurer and must expect to deal with it at arms' length.

There is, therefore, no general rule that the confidential relationship alleged by the Walshes exists here, nor do the alleged special circumstances convince us that such a rule should nonetheless be applied to these facts. The mere fact that one reposes great trust and confidence in another does not serve to create a confidential relationship, *Dover v. Burns,* 186 Ga. 19 (196 SE 785); nor will a past course of dealings between the parties serve to do so. *Lewis v. Foy,* 189 Ga. 596 (6 SE2d 788). Even though appellants claim that State Farm seductively advertised that "Like a good neighbor, State Farm is there," this does not change the relationship. For that matter, under Georgia law one does not have a confidential relationship with his "good neighbor." While such advertising may be of dubious accuracy, we nevertheless rule that it does not create a confidential relationship under Georgia law.

A further argument appellants make is that the release should be nullified because it was based upon the non-negligent mistake of fact concerning the extent of Mrs. Walsh's injuries. They claim that she exercised due diligence in her own behalf in seeking medical treatment and that she reasonably concluded from the doctor's statements that she could be expected steadily to improve. We do not find it necessary to decide this point because its possible impact is nullified by the appellant's subsequent lack of diligence in ascertaining the policy provision. Because appellants were willing to accept the statements of the adjuster that only $107.95 was payable, we do not see that it makes any difference how much

or how little more for personal injuries Mrs. Walsh might have asked, *had* she acted in her own behalf to ascertain from the policy that a larger payment could be made. Her problem was not that she nonnegligently failed to understand how great were her injuries; her problem was that she negligently failed to learn that they were compensable. However, even if the latter negligence had not occurred, and if we had here only a case of a small settlement and a release executed in the reasonable belief that injuries were slight when they later showed themselves as great, there was nonetheless no need to rush into the settlement and Mrs. Walsh would be barred by the reasoning of *James v. Tarpley,* 209 Ga. 421 (73 SE2d 188).

Finally appellants urge that the reasoning of *Blue Ridge Park Nurseries v. Owen,* 41 Ga. App. 98 (152 SE 485) should be applied to invalidate this release because, they allege, all the payment made was for the benefit of Mr. Walsh. Without deciding whether the record conclusively shows what expenses or whose expenses were meant to be compensated by the settlement figure here, we note that *Blue Ridge* was decided under the mandate of a statute which was the predecessor of Code Ann. § 53-503, and which forbade a married woman to relinquish a property right in consideration of the payment of her husband's debt. The statute applicable to the Walshes' claim is the 1969 amendment to § 53-503, which is a far more narrowly drawn statute, placing limitations only upon a wife's power to bind that "portion of the separate estate which is composed of tangible personal property." The fact that Mrs. Walsh's potential cause of action for damages for personal injury is not tangible personal property necessarily decides this point against her. *Judson v. Duran,* 231 Ga. 206. See also *Kennedy v. Bateman,* 217 Ga. 458 (123 SE2d 656).

To the extent to which the Walshes urge by inference that there was no consideration given for Mrs. Walsh's signing the release, the release itself defeats the claim. Both husband and wife signed it, and its necessary interpretation is that the consideration stated was paid to them jointly. While the settlement check is not in the record, Mrs. Walsh acknowledged in her deposition that she endorsed it on the back. There was consideration given for her execution of the release.

*Judgment affirmed. Bell, C. J., Eberhardt, P. J., Clark and Stolz, JJ., concur. Pannell, J., concurs in the judgment. Deen, Quillian and Evans, JJ., dissent.*

EVANS, Judge, dissenting in part and concurring in part. Walter

E. Walsh and Mrs. Aubrey B. Walsh, husband and wife, were involved in an automobile collision with D. J. Campbell. Walter E. Walsh was the owner and driver of the vehicle in which he and his wife were riding (Tr. p. 30). Mrs. Walsh suffered personal injuries as a result of the collision, and Mr. Walsh lost time from work and suffered damages to his automobile. Both items of damages to him amounted to only $107.95. When it was learned that Campbell was not carrying liability insurance, Walsh called on State Farm, his own automobile insurer, under the uninsured motorist provision of his policy. State Farm's agent advised Walsh that the maximum amount the uninsured motorist provision of the State Farm policy would pay was as to the lost time of Mr. Walsh and damages to his automobile in the total amount of $107.95. Relying upon this statement of State Farm's agent, Walsh accepted $107.95, and both husband and wife signed a release.

Walter E. Walsh and Mrs. Aubrey B. Walsh filed separate suits against D. J. Campbell, and had copy of the summons and complaint served upon State Farm. State Farm pleaded the release as an accord and satisfaction in each case. Plaintiff in each case contended the release was void and should be set aside. State Farm's separate motions for summary judgment were granted by the lower court.

The majority opinion affirms the lower court in the grant of summary judgment against Walter E. Walsh in Case No. 48155, and in that case I concur in the judgment only.

The majority opinion also affirms the lower court in the grant of summary judgment against Mrs. Aubrey Walsh in Case No. 48154. As to that judgment I respectfully dissent. The release which husband and wife signed was a nudum pactum and completely without consideration as to Mrs. Walsh. She was paid nothing, whereas Walter Walsh was paid the entire $107.95 as the amount represented by his lost time and necessary repairs to automobile.

A case almost exactly in point is that of *Blue Ridge Park Nurseries v. Owens,* 41 Ga. App. 98, 99 (6) (152 SE 485). In that case a mother sued to recover for the homicide of her minor children, a right which was vested in her by virtue of Code Ann. § 105-1307. The defendant pleaded as an accord and satisfaction a certain release signed by her for $254.11; $234.11 of this sum was for hospital and medical services and funeral expenses, *all of which was a liability of the father* of the deceased child, and *none of which was owed by the mother.* The remaining $20 was paid directly to

her husband. During the trial, the mother (plaintiff) contended the release was void, which contention was upheld by the trial court and affirmed by the Court of Appeals. It will be noted that *the money was actually paid over to the mother* in the *Owens* case, but it was held that this was no obstacle to the setting aside of the release.

The above case is on all-fours with the case sub judice. The majority opinion attempts to explain away the *Owens* case, but without success. It asserts that *Owens* was decided under Code § 53-503 respecting the restrictions on a wife to bind her separate estate for debts of her husband, whereas the statute has been amended since then. To what extent and in what respect has the statute been amended? The new statute is just as binding as was the former one.

But in the case sub judice, the facts are even stronger than in the *Owens* case. There the *debts of the husband* were involved and the money paid to the wife was in consideration of *her husband's debts.* But here, husband Walsh suffered a definite and distinct loss for *his own lost time and repairs to his own automobile,* and both Walsh and State Farm were in perfect agreement as to the amount, to wit, $107.95, emphasized by the statement of Neff (State Farm's agent) that the uninsured motorist provision of the policy *would not pay for anything except these losses of the husband (the owner of the car).* We repeat that the Walsh case is even stronger in support of setting the release aside than was the *Owens* case.

I am authorized to state that Judge Deen joins in this dissent.