## 30107. COCHRAN et al. v. MURRAH.

HILL, Justice.
In this appeal upon certificate from the denial of the defendants' motion for summary judgment, the sole issue concerns cancellation, upon equitable grounds, of a release signed by the plaintiff.

The plaintiff had been employed by defendant William O. Cochran for over eight years as a farm laborer. He was paid seventy dollars a week and lived in a house furnished by his employer. Some weeks he was paid only sixty or sixty-five dollars but he does not know why and apparently has never asked. He can read, but never does.

On May 1, 1973, the plaintiff was attaching a plow to a tractor driven by defendant Cochran when the mechanical lift was suddenly activated, squeezing the plaintiff between the plow and the tractor and injuring his left side and back. After the accident the plaintiff saw several doctors on different occasions and was hospitalized for tests and treatment.

On deposition plaintiff testified that defendant Cochran paid one of the doctors "twenty some dollars" and also paid plaintiff's salary for three weeks even though he was unable to work. According to plaintiff's testimony, defendant Cochran told plaintiff that his insurance company was going to send some papers for the plaintiff to sign so the defendant could get back the money he had

paid the doctor. The plaintiff testified further that defendant Cochran told him that the insurance would pay the medical bills and would pay the plaintiff as long as he remained unable to work.

On May 25, 1973, the defendant brought the papers out to the plaintiff's house and told him to sign them. The plaintiff testified that he got up out of bed to sign the papers, that he was still on pain pills and that he signed them although he did not read them.

The papers consisted of an agreement and release by which the plaintiff released defendant Cochran and defendant Georgia Farm Bureau Mutual Insurance Company from any and all claims arising out of the accident in exchange for $248.74 paid to the plaintiff and a promise to pay his future medical expenses for one year up to a total of $1,000. The plaintiff moved out of the house on the defendant's farm when he was told to begin paying rent of $50 a month.

Plaintiff filed suit against defendant Cochran and the defendant insurance company seeking cancellation of the release and payment of his salary of $70 a week plus his medical expenses, less payments previously made to him. In a second count alleging negligence he prayed for damages for lost wages, medical expenses, pain and suffering and total and permanent disability.

The defendants moved for summary judgment based on the release. They relied on the pleadings, the release, plaintiff's deposition, and an affidavit of defendant Cochran stating that he saw the plaintiff voluntarily sign the release at his request. The trial judge denied the motion and certified that order for immediate appeal.

The rule in this state is that where one who can read signs a contract without reading it, he is bound by the terms thereof, unless he can show that an emergency existed at the time of signing that would excuse his failure to read it, or that the opposite party misled him by an artifice or device which prevented him from reading it, or that a fiduciary or confidential relationship existed between the parties upon which he relied in not reading the contract. *Morrison v. Roberts,* 195 Ga. 45 (23 SE2d 164), and cases cited therein.

Here the plaintiff admits that he can read, but that

he did not read the release. The law is clear that, since he can read, he is responsible for what he signs, unless he fits within one of the exceptions mentioned above.

Upon trial of a case seeking cancellation of a release, the burden of proof would be upon the releasor to bring himself within one of the exceptions. On the releasees' motion for summary judgment, however, the movants have the burden of producing evidence which negatives, with necessary certitude, the plaintiff's claim (*Burnette Ford, Inc. v. Hayes*, 227 Ga. 551 (181 SE2d 866)).

Did the defendants in the case before us produce evidence negating the possibility that plaintiff may come within one of the exceptions to the rule? We need consider only one of those exceptions because, if a confidential relationship were found to exist between the two parties, on which plaintiff relied in signing the release without reading it, the plaintiff would not be bound by the release if his employer misled him as to its contents.

Code Ann. § 37-707 defines confidential relations as follows: "Any relations shall be deemed confidential, arising from nature or created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another; or where, from similar relation of mutual confidence, the law requires the utmost good faith; such as partners, principal and agent, etc." The relationships listed as examples in the statute are not exclusive, as shown by the use of the abbreviation "etc." and the phrase "where one party is so situated. . ."

In addition to partners and principals and agents, it has been held that confidential relationships may exist between husband and wife (*Cain v. Ligon,* 71 Ga. 692), brother and sister (*Sutton v. McMillan,* 213 Ga. 90 (3) (97 SE2d 139)), and even banks and creditors of a depositor (*American Nat. Bank v. Fidelity &c. Co.,* 131 Ga. 854, 859 (63 SE 622)).

This is to say that although some confidential relationships are created by law and contract (e.g., partners), others may be created by the facts of the particular case. See *Johnson v. Sherrer,* 197 Ga. 392, 395 (29 SE2d 581). As noted in *Bernstein v. Peters,* 69 Ga. App. 525, 533 (26 SE2d 192), the facts of that case did not show

a confidential relationship between a retailer and the agent of a liquor wholesaler. Implicit in that decision, however, is the recognition that a confidential relationship may exist between businessmen, depending on the facts. See also *Thomas v. Eason,* 208 Ga. 822, 827 (69 SE2d 729), where it was found that under the facts alleged there, no confidential relationship existed between defendant and the preacher with whom she dealt.

We here adopt the statements in the dissenting opinion in *Cole v. Cates,* 113 Ga. App. 540 (149 SE2d 165), referring to Code Ann. § 37-707 as follows (pp. 546, 547): "The above Code section does not attempt to comprehensively enumerate the cases wherein the relation of mutual confidence is present... The showing of a relationship *in fact* which justifies the reposing of confidence by one party in another is all the law requires. Code § 37-704 expressly goes beyond the strict fiduciary relations of the parties and states that the obligation to communicate may arise 'from the particular circumstances of the case.' The same is true as to Code § 37-707."

In this case the relationship between the parties was employer-employee. This is not the type of relationship such as that of principal and agent from which the law will necessarily imply confidentiality. Generally the relationship between an employer and employee is that of arms-length bargaining. This is not to say, however, that under a particular fact situation a confidential relationship can never exist between an employer and his employee (e.g., an employer signing checks prepared by his secretary-bookkeeper).

In the case before us there are facts which could be shown by the plaintiff from which a jury could find a confidential relationship sufficient to set aside the release; i.e., movants have not produced evidence negativing plaintiff's claim. The plaintiff had worked for the defendant Cochran for eight years. Part of the plaintiff's pay consisted of a house on the defendant's farm, rent free. Plaintiff apparently trusted his employer to pay him whatever wages were due to be paid. He may show that he was accustomed to relying on the defendant

for advice. The plaintiff claims that the defendant told him the insurance company would pay all his medical bills as well as his lost wages. He rose from bed and signed the release at the defendant's request relying on the defendant's representations rather than reading the document himself. A jury question exists as to whether a confidential relationship existed such as would excuse the plaintiff for relying on the representations of his employer.

The defendants rely on cases holding that there is no confidential relationship between an insurance company and an insured or claimant; e.g., *Walsh v. Campbell,* 130 Ga. App. 194 (202 SE2d 657); but see *Heard v. Johnson,* 126 Ga. App. 222 (190 SE2d 455). Their reliance on such cases is misplaced in this situation because the plaintiff is claiming that a confidential relationship existed between himself and his employer, not between himself and his employer's insurance company.

In view of the foregoing, it is unnecessary to consider plaintiff's alternative arguments directed at setting aside the release. The defendants failed to carry the burden of producing evidence to negative plaintiff's claim and the trial court properly denied their motion for summary judgment.

*Judgment affirmed. All the Justices concur, except Gunter, J., who concurs specially, and Ingram and Hall, JJ., who concur in the judgment only.*

ARGUED JULY 10, 1975 — DECIDED SEPTEMBER 30, 1975.

*Dennis & Fain, Michael J. Gorby, Dennis J. Webb,* for appellants.
*Scott Walters, Jr.,* for appellee.

GUNTER, Justice, concurring specially.

I concur in the court's judgment affirming the denial of the motion by the appellants for summary judgment. However, on the basis of the summary judgment evidence in this case, I would proceed one step further than the opinion of the court seems to me to go.

Although the appellee here testified that he could

read and that he had signed papers in this case without reading them, he also testified that he did not know what a release was, that is, that he did not know the meaning of the word "release." Although a person may be able to read, if he is unable to understand the words that he reads in a document, the reading of the document by him is merely an exercise in futility.

In situations of marked mental disparity between a person procuring the execution of a release and the person signing the release, it is my view that a fact issue for determination is presented when the signer of the release, even though he had the ability to read, did not read the release and contends that it was necessary to rely upon the representations of the opposite party as to the meaning of the document.

In short, I think that the appellee here should have the opportunity to attempt to convince the fact-finder that, even though he could read, it would have been futile for him to have read the document presented to him; and that he had to rely on the representations of his employer with respect to what the document meant.

I concur in the judgment.