**WHOLE COURT**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 15, 2016**

# In the Court of Appeals of Georgia

A16A0400. THOR GALLERY AT SOUTH DEKALB, LLC v. MONGER d/b/a MONGER INVESTMENT GROUP, LLC et al.

BOGGS, Judge.

Thor Gallery at South DeKalb, LLC ("Thor Gallery") appeals from an order of the State Court of DeKalb County that rescinded a commercial lease between Thor Gallery and Monger Investment Group, LLC and Monger Entertainment Group, Inc. (collectively "Monger") and required Thor Gallery to return Monger's security deposit. One of Thor Gallery's arguments on appeal is that the State Court of DeKalb County lacked jurisdiction to provide Monger with the remedy of equitable rescission. For the reasons explained below, we agree and therefore vacate the state court's order and remand this case with direction that it be transferred to the Superior Court of DeKalb County.

The record shows that the lease between the parties required Monger to obtain specified insurance before the lease commencement date, that the lease would not commence until Thor Gallery delivered possession to Monger, and that Monger's failure to obtain insurance would be considered a default entitling Thor Gallery to terminate Monger's right of possession without terminating the lease. When Monger discovered shortly after the lease was signed that the specified insurance was unavailable, it requested that Thor Gallery cancel the lease and return its security deposit. In the alternative, it requested that Thor Gallery revise the insurance requirements in the lease.

Thor Gallery refused to alter the insurance requirements and filed suit against Monger seeking money damages for lost rent even though it had never delivered possession of the premises to Monger. Monger asserted a counterclaim alleging impossibility of performance and damages in the amount of the security deposit paid to Thor Gallery. Both parties filed motions for summary judgment in their favor, and Monger's motion asserted that the lease should be rescinded. Following oral argument, the state court granted Monger's summary judgment motion and "rescind[ed] the lease agreement between these parties and [found] that [Monger] was entitled to the return of the initial payment/security deposit in the amount of

$12,197.00." See OCGA § 13-3-5 ("[i]mpossible, immoral, and illegal conditions are void and binding upon no one"); *Woody's Steaks v. Pastoria*, 261 Ga. App. 815, 819 (2) (584 SE2d 41) (2003) (insurance requirement in lease is condition precedent).

1. Thor Gallery contends the state court lacked jurisdiction to order rescission and a return of the security deposit. We agree.

> Georgia's state courts, created pursuant to OCGA § 15-7-2, exercise comprehensive jurisdiction over a wide range of claims, including, inter alia, landlord/tenant disputes, misdemeanor offenses (including driving under the influence), contract and tort cases, and cases involving real property and small claims, *but excluding* only felony criminal cases, certain domestic cases, *equity matters*, and land title cases. See OCGA § 15-7-4, 15-6-8.

(Emphasis supplied.) *In re Inquiry Concerning a Judge*, 265 Ga. 843, 846-847 (4) (462 SE2d 728) (1995). State courts, as well as this court, can exercise jurisdiction over certain cases involving rescission where no affirmative equitable relief is asserted. See *Walsh v. Campbell*, 130 Ga. App. 194, 196 (202 SE2d App. 657) (1973). But that is not the case here because Monger sought affirmative equitable relief in his motion for rescission. Cf. *Goodman v. Little*, 96 Ga. App. 110 (99 SE2d 517) (1957) (court without equity jurisdiction cannot address petition praying "for relief which only a court of equity, or a court of law exercising full equity powers,

3

could administer, such as the rescission of contracts, the cancellation of promissory notes, injunction, etc.")

The dissent cites *Brown v. Techdata Corp.*, 238 Ga. 622 (234 SE2d 787) (1977), in support of the conclusion that this case involves a rescission at law. But *Brown* in fact supports the conclusion that the rescission claim here is equitable in nature. As *Brown* explains, "[i]n the rescission 'at law' the tender itself effectuates the rescission" and the purchaser is entitled to the return of the purchase price "without taking any independent proceeding in equity to rescind the contract." Id. at 626. "In these instances, the plaintiff rescinds the contract himself by restoring, or making a bona fide offer to restore, to the defendant the fruits of the contract." Id.

In equitable rescission, in contrast, the plaintiff "seeks to invoke the affirmative powers of a court of equity to rescind, or *undo*, the contractual transaction." (Emphasis supplied.) Id. at 627. As explained in the same treatise on remedies relied upon by the dissent:

> Rescission in equity is a very different matter. Plaintiffs are frequently permitted to resort to equity courts for a rescission without much serious concern for the usual rule that equity jurisdiction is based upon the inadequacy of a legal remedy. In equity the suit is not *on* rescission, but *for* rescission; it is not a suit based upon the rescission already accomplished by the plaintiff, but a suit to have the court decree

4

a rescission. . . . Since rescission is not accomplished 'in equity' until the court so decrees, the plaintiff has no obligation before suit to make restitution of goods or money he received from the defendant. . . . [T]he judge must act to assure that each party is restored to his pre-contract position, at least as far as possible to do.

(Citations and footnotes omitted; emphasis in original.) Dobbs, Handbook on the Law of Remedies, § 4.8, p. 294 (1973).

In this case, that is precisely what occurred. Monger asked the court for the affirmative relief of rescission, the trial court decreed a rescission in its order, and required Thor Gallery to restore Monger by returning the security deposit. Monger did not sue *on rescission* based upon a tender already made. In the lease agreement at issue, the landlord Thor Gallery agreed to allow the use of its property for 15 years and the tenant Monger agreed to pay a certain amount of rent each month, with the amount to increase each year after the third year. But Thor Gallery never delivered possession of the property, and Monger never paid any rent. Accordingly, there was nothing for Monger to tender or offer to tender to effectuate a rescission at law.[1]

---

[1] If Monger had received possession of the property, he would have had something to tender or offer to tender to Thor Gallery to rescind the lease at law. The fact that Monger had not been given possession of the property distinguishes this case from a typical landlord/tenant dispute over which a state court generally has jurisdiction.

5

Rather, Monger sought "the affirmative powers of a court of equity to rescind, or *undo*, the contractual transaction." (Emphasis supplied.) *Brown*, supra, 238 Ga. at 627. Cf. *Regents of the Univ. of System of Ga. v. Carroll*, 203 Ga. 292, 293 (1) (b) (46 SE2d 496) (1948) (no equitable rescission where defendants do not seek affirmative equitable relief, but ask for dismissal with costs, a "purely defensive matter.") We must therefore vacate the state court's order and remand this case with direction that it be transferred to superior court. See *Blackmon v. Tenet Healthsystem Spalding*, 284 Ga. 369, 371 (667 SE2d 348) (2008).

The cases cited by the dissent do not require a different result. Four of the five cases relied upon do not address the issue of jurisdiction and whether the case involved legal or equitable rescission. See *Medical Staffing Network v. Connors*, 313 Ga. App. 645 (722 SE2d 370) (2012); *Crowell v. Williams*, 273 Ga. App. 676 (615 SE2d 797) (2005); *Intl. Sofware Solutions v. Atlanta Pressure Treated Lumber Co.*, 194 Ga. App. 441 (390 SE2d 659) (1990); *Cutliffe v. Chestnut*, 122 Ga. App. 195 (176 SE2d 607) (1970). Instead, they are simply cases in which a magistrate court or state court addressed a rescission claim below, or rescission is discussed generally. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been decided so as to

6

constitute precedent. [Cit.]" *Tolbert v. Whatley*, 223 Ga. App. 508, 513 (2) (478 SE2d 587) (1996). And we cannot determine from our opinion in *Hann v. Harpers Boutiques Intl.*, 284 Ga. App. 531 (644 SE2d 337) (2007), whether any tender was made or offered in connection with the rescission claim over which the state court had jurisdiction. Additionally, we stated there that the rescission claim at issue was based upon fraudulent inducement that is "legal in nature and not equitable." Id. at 533 (2). This case does not involve a rescission based upon fraudulent inducement.

Additionally, the fact that Monger cited a statute, OCGA § 13-4-62,[2] in support of his rescission claim does not automatically render it a claim "at law." Indeed, the Georgia Supreme Court has recognized that the restoration contemplated by the predecessor of this statute is equitable in nature. *Jones v. Gaskins*, 248 Ga. 510, 512 (1) (284 SE2d 398) (1981). See also *Lanier Home Center v. Underwood*, 252 Ga. App. 745, 746 (1) (557 SE2d 76) (2001) ("Georgia law allows equitable rescission for nonperformance of a contract: 'A party may rescind a contract without the consent of the opposite party on the ground of nonperformance by that party but only when

---

[2] This Code section provides: "A party may rescind a contract without the consent of the opposite party on the ground of nonperformance by that party but only when both parties can be restored to the condition in which they were before the contract was made."

7

both parties can be restored to the condition in which they were before the contract was made.' OCGA § 13-4-62. [Cit.]").

2. Thor Gallery's remaining enumerations of error are rendered moot by our holding in Division 1.

*Judgment vacated and case remanded with direction. Phipps. P. J., Dillard, Branch, McMillian, Mercier and Peterson, JJ., concur. Ellington, P. J., concurs in the judgment only. McFadden, J., dissents.*

A16A0400. THOR GALLERY AT SOUTH DEKALB, LLC v.
      MONGER d/b/a MONGER INVESTMENT GROUP, LLC et
      al.


McFADDEN, Judge, dissenting.

I respectfully dissent. The trial court had jurisdiction to rule in this action. So

I would decide the merits.

As detailed below, I would affirm the trial court's denial of summary judgment

to Thor Gallery on both Thor Gallery's claims and Monger's counterclaim. I also

would affirm the trial court's grant of summary judgment to Monger on Thor

Gallery's claims. Because a factual issue exists as to whether Monger was entitled to

rescind the contract and recover its security deposit, however, I would reverse the

trial court's grant of summary judgment to Monger[3] on its counterclaim.

1. *Trial court's jurisdiction.*

The majority correctly states that state courts do not have jurisdiction over

cases in equity. But not every case involving rescission of a contract is a case in

equity. "[A]n instrument may be voided in an action at law." *Walsh v. Campbell*, 130

Ga. App. 194, 196 (202 SE2d 657) (1973). As our Supreme Court described in *Brown*

*v. Techdata Corp.*, 238 Ga. 233, 626-627 (234 SE2d 787) (1977), two types of

rescission are available to parties to a contract: rescission in equity and rescission at

law. And if a contract is rescinded at law, a party may seek *in an action at law* to

recover the property which has been retained by the other party under the rescinded

contract, *Brown*, 238 Ga. at 626-627, even though, as the majority states, the right to

restoration of one's property under a rescinded contract is an equitable right. See

*Jones v. Gaskins*, 248 Ga. 510, 512 (1) (284 SE2d 398) (1981). See generally Dobbs,

Remedies, § 4.3, p. 255 (1973) (where rescission at law is accomplished by the

_____

[3] For convenience, in this dissent I treat the appellees as a single party and adopt the majority's collective use of the term "Monger" to describe them. I note that Thor Gallery brought this action against three defendants: the two entities that entered into the lease and an individual, Sampson Monger, who signed a personal guaranty of the lease.

2

unilateral act of the plaintiff, that party must then bring suit to obtain restitution of his money, but "[i]n such a case there is no need for equity intervention[.]"). State courts have jurisdiction to entertain rescission claims that are legal in nature. *Hann v. Harpers Boutiques Intl.*, 284 Ga. App. 531, 533 (2) (644 SE2d 337) (2007). See generally *Medical Staffing Network v. Connors*, 313 Ga. App. 645, 650-651 (3) (722 SE2d 370) (2012) (affirming state court decision that included finding that party had rescinded contract due to other parties' nonperformance); *Crowell v. Williams*, 273 Ga. App. 676, 677-678 (3) (615 SE2d 797) (2005) (reversing state court decision that denied plaintiff's attempt to recover money paid under contract that defendant had effectively rescinded due to plaintiff's nonperformance); *Intl. Software Solutions v. Atlanta Pressure Treated Lumber Co.*, 194 Ga. App. 441, 443 (390 SE2d 659) (1990) (affirming state court's conclusion that plaintiff was entitled to rescission, for nonperformance, of contract and refund of money paid to defendant for computer system, conditioned upon plaintiff's return of computer system to defendant).

Accordingly, the question of the state court's jurisdiction in this case turns on whether the contract was rescinded at law or in equity. A rescission at law occurs by the action of a party to the contract, typically by the tender of contractual benefits. See *Brown*, 238 Ga. at 626 ("[i]n the rescission 'at law' the tender itself effectuates

3

the rescission); see also *Jesinoski v. Countrywide Home Loans*, __ U. S. __, __ (135 SCt 790, 190 LE2d 650) (2015) (in rescission at law, party to contract effects rescission by returning what he received under contract); *Sherzer v. Homestar Mtg. Svcs.*, 707 F3d 255, 261 (3d Cir. 2013) (rescission at law "occurs automatically when parties have taken [a] requisite action") (citation omitted). See generally Dobbs, Remedies, § 4.3, p. 255 (1973) (in a rescission at law, "the plaintiff may unilaterally rescind against the will of the defendant, assuming the plaintiff has good substantive grounds for doing so"). In contrast, a rescission in equity requires the action of a court to undo the contractual transaction. *Brown*, 238 Ga. at 627; see also *Jesinoski*, __ U. S. at __; *Sherzer*, 707 F3d at 261. See generally Dobbs, Remedies § 4.8, pp. 292-294 (1973) (discussing role of court in rescission at law versus rescission in equity).

In its counterclaim and motion for summary judgment, Monger sought to rescind the lease for Thor Gallery's nonperformance under OCGA § 13-4-62, which permits a party to take action to rescind a contract. That Code section provides that "[a] *party* may rescind a contract without the consent of the opposite party on the ground of nonperformance by that party but only when both parties can be restored to the condition in which they were before the contract was made." OCGA § 13-4-62 (emphasis supplied.) The record shows that both parties could be restored to the

4

condition in which they were before the contract was made. And a party may invoke its right to rescind under this Code section in a court proceeding. See *Intl. Software Solutions*, 194 Ga. App. 441, 442 (390 SE2d 659) (1990).

Nevertheless, as the majority points out, Monger made no tender to Thor Gallery of benefits that it had received under the contract. It was impossible for Monger to make a tender of benefits such as money or possession of the premises to Thor Gallery, because Thor Gallery had not given any such benefits to Monger under the lease. By opting to rescind rather than seek to recover under the lease, however, Monger did relinquish its ability to hold Thor Gallery to its obligations thereunder. Moreover, we have held that, "[w]here money is paid on a contract which is executory on the party of him who receives the money, and the party so receiving fails to fulfill his part of the contract, the injured party may elect either to bring action on the contract and recover damages for nonperformance, *or to consider the contract as rescinded* and recover the money paid." *Cutcliffe*, 122 Ga. App. at 202 (2) (citation and punctuation omitted; emphasis supplied). And our courts have recognized exceptions to the requirement that a party offer restoration in order to rescind a contract under OCGA § 13-4-62 "where nothing of any value is received by the party seeking to rescind" or "where the amount received under the contract sought to be

5

rescinded may be less than the amount actually due the party seeking to rescind."
*2010-1 SFG Venture LLC v. Lee Bank & Trust Co.*, 332 Ga. App. 894, 905 (3) (a) (775 SE2d 243) (2015) (citation omitted). A rescission may be at law even though tender is not possible for one of these reasons. See Dobbs, Remedies § 4.8, p. 295 (1973).

The majority cites *Walsh v. Campbell*, supra, 130 Ga. App. 194, for the proposition that state courts "can exercise jurisdiction over certain cases involving rescission where no affirmative equitable relief is asserted." The *Walsh* decision does not hold, however, that a case is one in equity rather than at law simply because the plaintiff seeks to recover property retained by the other party under a rescinded contract. Such a holding would conflict with our Supreme Court's holding in *Brown*. See *Brown*, 238 Ga. at 626.

For these reasons, Monger's rescission of the lease for nonperformance under OCGA § 13-4-62 was a rescission at law. Consequently, the trial court had jurisdiction over this case and we must address the merits of Thor Gallery's appeal from the state court's ruling.

2. *Summary judgment.*

In her order, the trial court denied Thor Gallery's motion for summary judgment (which had addressed both Thor Gallery's claims and Monger's counterclaim), granted Monger's motion for summary judgment (which had also addressed both parties' claims ), held that the lease was rescinded, and ordered Thor Gallery to return Monger's security deposit. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law[.]" OCGA § 9-11-56 (c). "On a motion for summary judgment the plaintiff [or counterclaim plaintiff], as movant, has the burden of establishing the absence or non-existence of any defense raised by the defendant [or counterclaim defendant]." *Greenstein v. Bank of the Ozarks*, 326 Ga. App. 648, 649 (1) (757 SE2d 254) (2014) (citation and punctuation omitted). This court "review[s] a grant or denial of summary judgment de novo and construe[s] the evidence in the light most favorable to the nonmovant. Because this [dissent] addresses cross-motions for summary judgment, [I] will construe the facts in favor of the nonmoving party as appropriate." *Krieger v. Bonds*, 333 Ga. App. 19, 20 (775 SE2d 264) (2015) (citation and punctuation omitted).

(a) *Thor Gallery's claims.*

7

In its action against Monger, Thor Gallery alleged that Monger breached the lease by failing to take possession of the premises and failing to pay rent as it became due, and it alleged that individual defendant Sampson Monger breached a personal guaranty to pay Monger's rent. The trial court denied Thor Gallery's motion for summary judgment and granted Monger's motion for summary judgment on these claims. I find no error, because the evidence shows that Thor Gallery did not comply with the lease requirement that it provide Monger with notice of and an opportunity to cure any defaults.

The lease pertinently provides that Monger's failure to make a rent payment or to observe or perform any other term or condition of the lease constitutes a default and permits Thor Gallery to seek remedies under the lease, *unless* such failure is cured within a specified period "after [Thor Gallery] has sent notice of such failure to [Monger.]" The lease requires that "every notice or demand given by either party to the other . . . shall be in writing and . . . shall be served personally or by a courier service that provides a signed delivery receipt, or United States registered or certified mail, return receipt requested, postage prepaid, addressed, if to [t]enant, at the address first set forth in this [l]ease[.]" To the extent the requirements of these provisions are

ambiguous, they must be construed against the drafter, Thor Gallery. *Zions First Nat. Bank v. Macke*, 316 Ga. App. 744, 753 (4) (a) (730 SE2d 462) (2012).

The record contains two letters that Thor Gallery sent by certified mail to Monger. First, a March 19, 2014 letter instructed Monger to "take notice" of three things: (1) that possession of the premises was ready to be delivered to Monger but that such delivery had been delayed because Thor Gallery had not received from Monger certain insurance policies required under the lease; (2) that Thor Gallery could not continue to delay the commencement of the lease while waiting to receive the insurance policies, and therefore deemed the "Lease Commencement Date," as defined in the lease, to be March 19, 2014; and (3) that if Monger "continue[s] to fail to comply with the [l]ease as described above, [Monger] *will* be in default of the [l]ease and [Thor Gallery] *will* seek all applicable remedies under the [l]ease." (Emphasis supplied.) Notably, this letter identified Monger's noncompliance as a failure to provide insurance policies, not as a failure to take possession of the premises or a failure to pay rent. Moreover, the letter expressly stated that Monger "*will* be" in default if it continued to fail to comply with the insurance policy requirement, implying that at the time Monger was *not* in default. The March 19, 2014 letter was not sufficiently specific to constitute notice under the lease of Thor

9

Gallery's claim that Monger defaulted by failing to take possession of the premises and failing to make rent payments.

Second, a July 11, 2014 letter purported to notify Monger that it was in default for failing to provide Thor Gallery with insurance policies and failing to pay rent as it became due and payable. This letter also failed to provide notice of the specific breaches upon which Thor Gallery bases this action. As with the earlier letter, this letter identified Monger's noncompliance as a failure to provide insurance policies, not as a failure to take possession of the premises, and the ambiguity arising from this lack of precision must be construed against Thor Gallery. See *Zions*, 316 Ga. App. at 753 (4) (a). While the letter did identify Monger's failure to pay rent as a ground for default, in fact at that time Monger was *not* in breach of any provisions regarding rent payment, as Thor Gallery subsequently conceded, because Monger's obligation to pay rent under the lease had not yet begun.

Because there is no evidence that Thor Gallery provided Monger with notice of and an opportunity to cure the breaches it alleges in its complaint, as required by the lease, the trial court did not err in denying summary judgment to Thor Gallery and granting summary judgment to Monger on Thor Gallery's breach of contract and breach of guaranty claims. See *Zions First Nat. Bank*, 316 Ga. App. at 753 (4) (a)

10

(holding that party must comply with notice and cure provisions before seeking remedy for default under contract).

(b) *Monger's counterclaim.*

In its counterclaim, among other things, Monger alleged that Thor Gallery had not performed obligations under the lease and asked to recover its security deposit. In its summary judgment motion, Monger argued that it was entitled to this remedy under OCGA § 13-4-62, which permits a party to a contract to "rescind the contract without the consent of the opposite party on the ground of nonperformance by that party but only when both parties can be restored to the condition in which they were before the contract was made." However, "Georgia courts have refused to allow rescission when a [party seeking rescission] has materially breached the contract or when [that party's] nonperformance justified [the other party's] subsequent nonperformance[.]" *Martin v. Rollins, Inc.*, 238 Ga. 119, 120 (1) (231 SE2d 751) (1977) (citations omitted). As detailed below, there exist genuine issues of material fact about whether both Thor Gallery and Monger failed to perform under the lease. These facts preclude summary judgment to either party on Monger's counterclaim. Accordingly, the trial court correctly denied summary judgment to Thor Gallery on the counterclaim but erred in granting summary judgment to Monger.

(i) *Thor Gallery's alleged nonperformance.* Monger argues that Thor Gallery failed to perform under the lease because it did not give Monger notice of and opportunity to cure defaults and because it charged Monger rent but did not deliver possession of the premises.

As to notice (as discussed above in Division 2 (a) of this dissent), the evidence shows that Thor Gallery did not provide Monger with the required notice of and opportunity to cure the alleged defaults. While this nonperformance precluded Thor Gallery's claims against Monger, it did not authorize Monger to rescind the lease under OCGA § 13-4-62 because the nonperformance was not "so substantial and fundamental as to defeat the object of the contract." *Yi v. Li*, 313 Ga. App. 273, 277 (721 SE2d 144) (2011) (citation and punctuation omitted).

As to delivery of possession of the premises, Thor Gallery argues that it was excused from this obligation because Monger did not obtain the insurance coverage required under the lease. The lease provisions relevant to these arguments provided: (1) that Thor Gallery could begin charging rent the earlier of the date Monger opened for business to the public or 150 days after the "Lease Commencement Date"; (2) that the "Lease Commencement Date" occurred when possession of the premises was delivered to Monger; (3) that Monger "shall deliver" to Thor Gallery certain

12

documents pertaining to insurance "prior to the [']Lease Commencement Date[']";
and (4) that Thor Gallery could invoke the "Lease Commencement Date" while
delaying delivery of possession of the premises if the delay arose "from the acts or
omissions of [Monger] or of any person or entity acting on behalf of, or at the
direction of, [Monger]."

I am not convinced by Thor Gallery's argument that these provisions
established Monger's delivery of the insurance documents as a condition precedent
to Thor Gallery's delivery of the premises. Compare *Yi*, 313 Ga. App. at 277
(provision expressly conditioning closing in purchase of ice cream store franchise
upon obtaining franchisor's consent was a condition precedent to the transaction). To
the extent delivery of the insurance documents was a condition precedent to anything,
it was a condition precedent to the "Lease Commencement Date," which under the
lease was usually but not always the same date as the date of delivery of possession
of the premises. And Thor Gallery waived that condition precedent when it deemed
the "Lease Commencement Date" to be March 19, 2014, even though it had not
received the insurance documents. (See discussion of March 19, 2014 letter in
Division 2 (a) of this dissent.) See *Dental One Assoc. v. JKR Realty Assoc.*, 269 Ga.
616, 618 (2) (501 SE2d 497) (1998) (party can waive condition precedent).

13

Nevertheless, the above referenced lease provisions, taken together, permitted Thor Gallery to invoke the "Lease Commencement Date" and charge Monger rent despite failing to deliver possession of the premises to Monger if the failure to deliver possession of the premises arose from Monger's acts or omissions. And a fact question exists as to whether Thor Gallery's failure to deliver possession of the premises arose from Monger's acts or omissions. Thor Gallery has presented evidence that it did not deliver possession of the premises to Monger because Monger had not obtained the insurance required by the lease. Monger has presented evidence that such insurance was unavailable, but it offers no explanation as to why the insurance was unavailable. The evidence does not reveal whether or not the insurance was unavailable due to some act or omission of Monger. Consequently, Monger has not met its burden, as counterclaim plaintiff, of showing that there is evidence *demanding* a judgment that Thor Gallery failed to perform an obligation to deliver possession of the premises.

(ii) *Monger's alleged nonperformance.* Even if Thor Gallery did not perform its obligation to deliver possession of the premises under the lease, Monger cannot recover under OCGA § 13-4-62 if Monger also materially breached the lease or acted in a way that justified Thor Gallery's nonperformance. See *Martin*, 238 Ga. at 120

14

(1). Thor Gallery argues that Monger did not perform its obligations under the lease to obtain insurance and to provide Thor Gallery with certain construction permits, plans, and specifications. Monger has presented evidence that it could not satisfy these obligations because the required insurance was unavailable (the fact of which Monger informed Thor Gallery *before* Thor Gallery signed the lease) and because, without possession of the premises, it could not procure the required construction documents. Fact questions remain as to whether this unavailability rendered performance of the condition impossible such that the condition was void under OCGA § 13-3-5. Additionally, whether Monger's failure to obtain insurance and construction documents under the circumstances "was such a material breach of the [lease] so as to bar rescission depends on the resolution . . . of issues of fact concerning the causes and nature of the [failure], and its contribution, if any, to the alleged breach of [Thor Gallery]." *Martin*, 238 Ga. at 121 (1). Accordingly, neither party is entitled to summary judgment on the counterclaim.

15