### 46530.   EMPLOYERS COMMERCIAL UNION COMPANIES v. WALDROP et al.

WHITMAN, Judge. This appeal arises from an action for declaratory judgment.

Mr. Worthington filed a complaint against Mr. and Mrs. Waldrop alleging that Mr. Waldrop was driving a family-purpose vehicle owned by Mrs. Waldrop; that the Waldrop vehicle collided with the Worthington vehicle, causing personal injury and damage to Worthington; and that the direct and proximate cause of same was the negligence of the defendants in certain particulars.

Mr. Worthington carried a liability insurance policy issued by Employers Commercial Union Companies, which included protection against uninsured motorists. He served his insurer with a copy of his complaint in order to invoke the uninsured motorist protection.

The present action for declaratory judgment was brought by Employers Commercial Union Companies against Worthington, the Waldrops and State Farm Mutual Auto. Ins. Co., seeking an adjudication that its uninsured motorist protection was not applicable in the case for the reason that the Waldrop vehicle was in fact insured by State Farm.

The issue made by the complaint for declaratory judgment, State Farm's answer, and the evidence was whether the State Farm policy was in force and effect on October 7, 1970, the date of the collision. The case was tried without a jury with the trial judge finding that the State Farm policy had not become effective on October 7, 1970. This judgment is appealed from and enumerated as error. *Held:*

1. Mr. Waldrop made application for liability insurance to the Georgia Automobile Insurance Plan, which is created by law, subject to the general supervision and regulations of the State Insurance Commissioner. See Ga. L. 1951, pp. 565, .576 (*Code Ann.* § 92A-617). The plan (known as the "assigned risk" plan) caters only to those who are not able for various reasons to obtain automobile liability insurance in the open market. Such people are usually classified as "high risks." The plan is not an insurer, rather, it receives and equitably apportions applications for automobile liability insurance among all such insurers doing business in the State. Generally, any insurer to whom a particular risk is assigned must accept the assignment and provide coverage, but is allowed a higher premium commensurate with the risk. The premium is determined by a rating system approved by the Insurance Commissioner which is keyed to the nature, number and severity of convictions for law violations applicable to motor vehicles. This rating and premium information is available to "producers" (insurance agents) in what is called the "Automobile Insurance Plan Manual."

The Insurance Commissioner's regulations,[1] §§ 120-2-14-.11, and

---

[1]These are to be found in the Official Compilation of the Rules and Regulations of the State of Georgia, Chap. 120—which is assigned to the Comptroller General—and of which we take judicial notice ,under the provisions of the Adminstrative Procedure Act,

120-2-14-.14, provide that in order to obtain insurance on a private passenger car the full annual premium must accompany an application for insurance under the plan. The high-risk premium rates above mentioned provide (for some unknown reason but not here relevant) that if a certificate of insurance ("SR-22") is to be filed on behalf of the insured with the Department of Public Safety (which administers the financial responsibility law—see *Code Ann.* § 92A-608, as amended), the high-risk premium shall be increased by an additional 10%.

Waldrop's application was placed with the plan on September 28, 1970, and the risk was assigned to State Farm with direction that coverage was to be effective on September 29, 1970. The full annual high-risk premium accompanied the application but not the additional 10% allowable for an SR-22 filing. State Farm argues an SR-22 filing was required by Waldrop's application and, therefore, it would not be required to make the coverage effective until after the additional 10% was in hand (which under one view of the evidence was requested by State Farm but was not recieved until after October 7, 1970). The application itself does not substantiate State Farm's contention. It reveals that Waldrop had been convicted of "driving under the influence" on June 2, 1968, with revocation of operator's license. Under *Code Ann.* § 92A-608, as amended, such revocation would be effective *for one year only,* subject to reinstatement during such time upon evidence of liability insurance coverage or other evidence of financial responsibility acceptable to the Director of the Department of Public Safety. Thus, it cannot be contended that the June-1968 DUI conviction made SR-22 filing necessary in September, 1970, more than two years later. The application asked: "Is applicant or other eligible operator required to file evidence of financial responsibility. Yes ___ No. ___." The applicant answered: "Yes—Check to see if a filing is still necessary—if so please do so and bill the insured for the

---

Ga. L. 1964, pp. 338, 346 (*Code Ann.* § 3A-108). *Darnell v. Fireman's Fund Ins. Co.,* 115 Ga. App. 367 (154 SE2d 741). Cases holding to the contrary, decided prior to the statute, must yield to the statute.

premium." State Farm takes the untenable position that such an answer is not allowable; that "there is no place to put 'Maybe' or to put a footnote or explanation"; that "if this is done, certainly it should be done at the risk of the applicant." The answer says, in effect: "I am uncertain; I do not know." It is a good and responsive answer. A simple prompt inquiry by State Farm would have revealed to it what it in fact learned later when it attempted the unnecessary filing. The evidence contains the reply from the Department of Public Safety, stating: "No record indicating necessity for filing Form SR-22. . ."

2. But even if State Farm was authorized to consider itself as having been assigned an application requiring an SR-22 filing, but had not received the additional 10% premium which was authorized in this event, the regulations of the Insurance Commissioner provide, nevertheless, that coverage is effective on the date specified by the plan in the notice of designation, which in the case sub judice was September 29, 1970. In particular, the Insurance Commissioner's Regulation 120-2-14-.14 provides that while the company need not make a financial responsibility filing on behalf of the insured until it has the full annual premium in hand, it nevertheless shall within 15 working days issue a policy (if all information necessary to fix the proper rate is contained in the application) or issue a binder (if all information necessary to fix the proper rate is not contained in the application) to be effective, in either event, on the date specified by the plan in the plan's notice of assignment to the designated company. Where the premium received is found insufficient, the applicant is given a minimum of 30 days to pay the balance due.

"The rights of participants in the assigned risk plan for automobile liability insurance are controlled primarily by Sec. 17 of the Motor Vehicle Safety Responsibility Act of 1951 (Ga. L. 1951, pp. 565, 576; *Code Ann.* § 92A-617) and regulations promulgated in implementation thereof." *State Farm Mut. Auto. Ins. Co. v. Reese,* 116 Ga. App. 59, 60 (156 SE2d 529).

All the evidence shows that Waldrop had automobile liability insurance with State Farm effective as of September 29, 1970,

and the trial court erred in finding that such coverage was not in effect on October 7, 1970, the date of the collision.

*Judgment reversed with direction that judgment be entered in conformity with this opinion. Hall, P. J., and Eberhardt, J., concur.*

ARGUED SEPTEMBER 17, 1971—DECIDED OCTOBER 13, 1971— REHEARING DENIED NOVEMBER 1, 1971.

*Perry, Walters, Langstaff, Lippitt & Campbell, R. Edgar Campbell,* for appellant.

*Divine, Busbee & Wilkin, William T. Divine, Jr.,* for appellees.