70683, 70684. ALL AMERICAN ASSURANCE COMPANY
v. BROWN; and vice versa.
(339 SE2d 611)

BEASLEY, Judge.

H. C. Brown received notice from the Bank of Milan in May 1982 that it was time to renew an existing loan. Because he worked in Tennessee during the week, Brown went to the bank on Saturday, May 29, and spoke with the loan officer and executive vice president regarding the renewal. He also inquired about insurance to pay the loan in case of his death. The bank agreed to renew the loan and Brown executed the note. The loan officer explained the two types of insurance Brown could apply for to secure the balance: regular credit life insurance or, through All American Assurance Company, special ordinary insurance decreasing term. All American was one of about five companies for which the bank was soliciting insurance. The bank officer advised that the decreasing term insurance would be less costly. Brown completed and signed an application for this insurance and paid the stated premium. The application provided in part: "I further agree that the insurance shall not be in force and effect until this application shall have been approved by the All American Assurance Company, Baton Rouge, Louisiana, nor until the policy shall have been issued and the first premium thereon paid by me . . . I do hereby agree that the policy *to be issued* hereunder shall be delivered . . . to Bank of Milan, . . ." The application was dated June 1, the first business day following Saturday.

Brown was told by the loan officer that a physical examination would probably be required because of the history of cardiac problems which Brown disclosed on the application, and that he could save some time if he obtained the examination before the insurance company decided whether one was necessary. Consequently, Brown went for a physical examination that same Saturday. The medical questionnaire, which states that it is a continuation of and part of the application for insurance, and which was signed by Brown as well as the doctor on May 29, states in part: "I agree that any policy *to be issued* upon this application shall not be enforced or binding on the company until the advance premium thereon shall have been actually paid while I am living; and that this application and the several answers, statements and agreements herein contained shall be the basis of and a part of the consideration for the Contract of Insurance, and this Application and such policy shall constitute the entire contract."

The insurance company received the application on about June 4 and the results of the physical on June 23. It determined that no insurance could issue at the premium stated in the application. By letter of June 25, it informed the bank that the premium would have to

be higher ($757, more than double the $302.82 Brown originally paid) because of Brown's cardiac history, and it requested notification as to whether to continue to handle the application. Before the bank notified Brown of the increased premium, he died on July 3. A few days later Mrs. Brown went to the bank regarding the renewed loan and was told of the problem with the premium. Mrs. Brown gave the loan officer a check to cover the additional premium and instructed him to send it to All American. By letter of July 21, the insurance company informed the bank that there was no insurance on Mr. Brown's life because its counteroffer contained in the June 25 letter had not been accepted before Brown died. The insurance company also returned the premium checks that had been tendered, the one given on May 29 by Mr. Brown and the one brought by Mrs. Brown after her husband's death. Mrs. Brown thereafter requested proof of loss forms and the insurance company declined to furnish them, explaining there had been no policy.

Mrs. Brown individually and as executrix of her husband's estate filed suit against All American Assurance Company and the bank seeking to recover from them, jointly and severally, death benefits in the amount of the debt on the renewed loan, 25% bad faith penalty pursuant to OCGA § 33-4-6, attorney fees, and costs. The complaint set out four counts, two of them against both the insurance company and the bank. Count one alleged that because the bank accepted the two payments for the premium, the second after knowledge of his death, and led Brown to believe he was insured, it waived any further approval of the application and a policy became effective even though it was not issued within 30 days of the incurrence of indebtedness as required by OCGA § 33-31-7. Count two alleged negligence by defendants in failure to act on the application within a reasonable time after receipt; in failure of the insurance company to promptly notify the bank of the additional premium; and in failure of the bank to promptly notify Brown of the addition. Plaintiff alleged in both counts that the bank was the insurance company's agent in these regards.

The two defendants filed motions for summary judgment. Plaintiff filed a motion to strike portions of an affidavit of the loan officer which was attached to the bank's motion for summary judgment. The bank filed a motion to strike the contents of the affidavit of Faye Floyd, the Browns' daughter, and certain portions of the deposition of Mrs. Brown offered in opposition to the bank's motion for summary judgment. The trial court denied the defendants' motions for summary judgment and sustained both the plaintiff's and the bank's motions to strike, thus not considering the objected-to evidence in ruling on the motions for summary judgment. The bank did not appeal the denial of summary judgment but the defendant insurance company

obtained a certificate of immediate review and we granted its interlocutory application.

### Case No. 70683

On appeal, All American claims that the trial court erred in denying its motion for summary judgment. Plaintiff filed a "cross-appeal" of that portion of the trial court's order sustaining the bank's motion to strike portions of the evidence.

Did the trial court err in refusing to grant the insurance company summary judgment?

As to the contract claim, it is clear that Brown's application was a mere offer which the insurance company was free to accept or reject. Before acceptance, no contract of insurance ever came into existence and no liability on the contract can arise. Its counter offer was not accepted and, as provided in the application, the full amount of the first annual premium paid before Brown's death. The premium to be charged on a policy of insurance is one of the essential terms so that no contract exists until agreement is reached with respect to it. *Associated Mutuals v. Pope Lumber Co.*, 200 Ga. 487, 491 (37 SE2d 393) (1946). The payment of the first amount on the day the application was made created no contract of insurance because of the lack of the necessary contractual element of acceptance. *Whitmire v. Colonial Life &c. Ins. Co.*, 172 Ga. App. 651, 652 (323 SE2d 843) (1984). The payment by the widow of the balance of the premium required did not effect a policy. For one thing, an offer can be accepted only by the person or persons to whom it is made. *Gainesville Glass Co. v. Don Hammond, Inc.*, 157 Ga. App. 640, 642 (1) (278 SE2d 182) (1981). The acceptance by the agent of the additional amount could not revive the counter offer to insure the life which had already ended, as the event to be insured against had already transpired. Since there was no unequivocal, unconditional, and unvarying acceptance of the offer or of the counter offer before Brown died, no binding contract materialized. *Associated Mutuals*, supra at 495; *Whitmire*, supra at 651-652.

As to count two based on negligence due to various acts of delay, the case is controlled by *Watkins v. Coastal States Life Ins. Co.*, 118 Ga. App. 145 (162 SE2d 788) (1968). Even if the insurance company could be deemed dilatory in not notifying the bank faster than the several days it took for it to consider the medical report and figure a premium based on it and communicate with the bank; and assuming without deciding that the bank was the insurance company's agent for the purpose of conveying its counter offer to the bank's customer, and was negligent in not conveying the requirement of an additional amount quicker than the eight days between the date of the letter

and the date of the death, no cause of action is recognized. *Watkins v. Coastal States Life Ins. Co.*, supra; *Pearlman v. United Ins. Co. of America*, 142 Ga. App. 48 (234 SE2d 845) (1977). Appellant has shown no Georgia authority which creates a legal duty breached as claimed.

While it might be argued that OCGA § 33-31-7 (d) creates such a duty, we do not so construe the statute. It provides in part: "Upon acceptance of the insurance and within 30 days of the date upon which the indebtedness is incurred, the insurer shall cause the individual policy . . . to be delivered to the debtor." Bearing upon its meaning is OCGA § 33-31-5: "The term of any credit life insurance . . . shall commence, *subject to acceptance by the insurer*, on the date when the debtor becomes obligated to the creditor . . . In no event, however, in the case of a contract obligation involving future delivery or performance, must the insurance become effective before the date of such delivery or completion of such performance nor before the date when all of the terms of the indebtedness are set forth in the contract or instrument creating the indebtedness . . ." (Emphasis supplied.) The statute of which these sections are a part was passed in 1960. In its twenty-five year history section 7 (d) has not been construed to place upon insurance companies who receive applications a duty to accept or reject within 30 days of the date of indebtedness or even within some "reasonable time." Had the legislature intended to create such a duty, it could easily have done so. In another context, it did provide for a penalty for unreasonableness in refusing to pay a claim. OCGA § 33-4-6. There, of course, a contractual relationship exists. Here there is none as between the insurance company and the applicant, and the law has not imposed a duty or a penalty on mere failure to act on the application or convey a counter offer within any particular time.

Thus, the court erred in denying the insurance company's motion for summary judgment.

## Case No. 70684

Mrs. Brown, in her individual capacity and as her husband's executrix, filed a cross-appeal from the sustaining of the bank's motion to strike the contents of Faye Floyd's affidavit and certain portions of Mrs. Brown's deposition. However, the bank is not an appellant in the main appeal. A cross-appeal cannot be made against a party who is not an appellant. *Glennville Wood Preserving Co. v. Riddlespur*, 156 Ga. App. 578 (1) (276 SE2d 248) (1980).

In addition, the refusal to consider this evidence did not harm plaintiff because the court denied the motion for summary judgment made by the bank and this ruling is not appealed. Thus, even without

the evidence, plaintiff prevailed and her action against the bank survives. Insofar as the court likewise did not consider this evidence in denying the insurance company's motion for summary judgment (although the insurance company had not made a motion to strike), again, plaintiff prevailed on the summary judgment issue regardless of that evidence. And since we reverse the denial of summary judgment to the insurance company for the reasons stated in Division 1, that evidence would be irrelevant.

The third impediment is that Mrs. Brown did not petition the trial court for a certificate of immediate review of this interlocutory matter nor apply to this court for permission to appeal the granting of the motion to strike under the provisions of OCGA § 5-6-34 (b). There is no valid cross-appeal before us. Compare *Southeast Ceramics v. Klem*, 246 Ga. 294 (1) (271 SE2d 199) (1980), where the cross-appealed interlocutory matter did not need a separate certificate and application. That case differs because it involves a direct appeal, which the court was bound to consider. This case involves an interlocutory appeal, which both the lower court and this court can exercise discretion over with respect to the wisdom of a mid-stream appellate review. When that review, limited in scope, is permitted by way of certificate and grant of application, it does not automatically or mandatorily bring up others' complaints on separate rulings.

*Judgment reversed in Case No. 70683. Appeal dismissed in Case No. 70684. Banke, C. J., McMurray, P. J., Birdsong, P. J., Carley and Sognier, JJ., concur. Deen, P. J., Pope and Benham, JJ., dissent.*

DEEN, Presiding Judge, dissenting.

The majority opinion relies heavily upon *Whitmire v. Colonial Life &c. Ins. Co.*, 172 Ga. App. 651, 652 (323 SE2d 843) (1984), which in turn cites cases such as *Sasser v. Coastal States Life Ins. Co.*, 113 Ga. App. 17 (147 SE2d 5) (1966), and *Thomas v. Union Fidelity &c. Ins. Co.*, 168 Ga. App. 267 (1) (308 SE2d 609) (1983). These three cited cases contain limitation of the agent's authority provisions in the application. The majority mistakenly places the instant case in the category of the three cited cases; however, the case under consideration belongs in an entirely different line of authority.

"*Absent a clear and unequivocal limitation on the authority of an agent of an insurance company*, and absent fraud and collusion between the agent and the prospective insured, *the actual knowledge of the agent* of facts amounting to innocent misrepresentations *in the application for insurance is imputed to the insurer*, and the insurer will be estopped to assert that it would not have issued the policy if it had knowledge of the true facts." (Emphasis supplied.) *Allstate Ins. Co. v. Anderson*, 121 Ga. App. 582 (2) (174 SE2d 591) (1970). In ac-

cord *Reserve Life Ins. Co. v. Meeks*, 121 Ga. App. 592 (174 SE2d 585) (1970); *Chester v. State Farm Mut. Auto. Ins. Co.*, 121 Ga. App. 599 (174 SE2d 582) (1970). All three of these cases, as in the case *sub judice*, involve factual situations where *there is no limitation of authority* of the agent written in and appearing on the face of the application; therefore, a different rule obtains. Where there is no limitation of authority in the application, the agent has absolute power to waive any requirement listed in the application. Whatever the agent may orally tell the applicant may in fact amend and change the provisions contained in the application, as the agent is in reality speaking without restriction for the company and literally is the company where the latter has not restricted the former's authority.

It should be noted that the last three cited cases are whole court cases and are binding authority upon this court. Further, on summary judgment the insurer must negate an essential element of plaintiff's case to escape a jury trial. The insurer here, as movant, had the affirmative duty to prove that the agent did not make any oral representations to the applicant to the effect that none of the provisions and requirements of application was waived. The insurer did not move to strike the daughter's affidavit; therefore, in my opinion, when considering all the evidence, including her affidavit, a jury could conceivably find that some of the provisions could have been waived so that a binding contract of insurance existed. The trial court did not err in denying the insurance company's motion for summary judgment.

Since the insurance company did not move to strike the contents of Faye Floyd's affidavit and certain portions of Ms. Brown's, the trial court should and would have considered this evidence against the insurance company.

I would affirm in Case No. 70683 and reverse in Case No. 70684.

I am authorized to state that Judge Pope and Judge Benham join in this dissent.

DECIDED DECEMBER 3, 1985 —
REHEARING DENIED DECEMBER 20, 1985 —

*Emitte H. Griggs, David B. Higdon*, for appellant.
*Milton Harrison, Will Ed Smith, Billy W. Walker*, for appellees.