## 77582. RONDALE BUS SERVICE, INC. v. AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA.

(377 SE2d 726)

McMurray, Presiding Judge.

American Casualty Company of Reading, PA ("American") brought an action against Rondale Bus Service, Inc. ("Rondale") to recover an insurance premium allegedly owed by Rondale for motor vehicle liability insurance provided by American. Rondale denied the material allegations of the complaint and counterclaimed, seeking a "refund of [its] deposit premium." American subsequently filed a motion for summary judgment. The undisputed facts are as follows:

Rondale is in the business of renting and chartering buses. In the fall of 1985, Rondale discovered that its insurance carrier intended to increase Rondale's annual insurance premium by approximately $50,000. As a consequence, Rondale contacted Sorrier Insurance Agency, Inc. ("Sorrier"), an independent insurance agency, and was informed by a Sorrier representative that motor vehicle liability insurance could be provided to Rondale through "[t]he Georgia Automobile Insurance Plan" (the assigned risk plan) at an annual premium rate of $44,000.[1] Relying on this "quote," Rondale executed an application entitled, "COMMERCIAL/TRUCKERS GEORGIA AUTOMOBILE INSURANCE PLAN." The application provided a "Total Estimated Premium [of] *$42,153.00*" and indicated a "Deposit Premium" of "*$14,310.00*." The application further indicated that Rondale's coverage was to be effective October 23, 1985, and disclosed that "the premium shown on [the] application is an estimated premium"; that "[t]he [insurance] company reserves the right to adjust the premium either prior to or after the issuance of the Policy, whenever applicable"; and that "the applicant may be able to obtain insur-

---

[1] The assigned risk plan was organized by Georgia's insurance commissioner to reduce "exposure of the motoring public to injury and damage at the hands of financially irresponsible drivers. The enactment of the assigned risk plan found in Code Ann. § 68C-601 [now OCGA § 40-9-100] indicates a determination by the General Assembly that the innocent should not bear the loss." *Young v. Allstate Ins. Co.*, 248 Ga. 350, 351 (282 SE2d 115). To this extent, the plan "caters only to those who are not able for various reasons to obtain automobile liability insurance in the open market. Such people are usually classified as 'high risks.' The plan is not an insurer, rather, it receives and equitably apportions applications for automobile liability insurance among all such insurers doing business in the State." *Employers Commercial Union Cos. v. Waldrop*, 124 Ga. App. 746, 747 (1), supra.

ance coverage in the voluntary market by making inquiry of more than one source."

Sorrier mailed Rondale's application and deposit premium to the assigned risk plan on October 22, 1985. The assigned risk plan assigned Rondale's application to American and American received an "illegible" copy of the application on November 4, 1985. On November 25, 1985, American received a "legible copy" of the application and, applying a formula prescribed by the assigned risk plan, American determined that Rondale's annual premium was $111,266. (American later submitted evidence showing that its original premium calculation was in error and that Rondale's annual premium was $110,405.) On January 3, 1986, American mailed an insurance policy, effective October 23, 1985, and a premium notice to Rondale. On January 27, 1986, Rondale requested that its coverage with American be cancelled due to the difference between the premium charged by American and the premium "quote" made by the Sorrier representative. American cancelled Rondale's policy on March 31, 1986, and demanded an earned premium of $40,193. American later amended its demand, seeking to recover an earned premium of $19,090 for coverage provided through January 31, 1986. From this and other evidence, the trial court entered summary judgment in favor of American in the principal amount of $19,090. Rondale now appeals. *Held*:

1. Rondale first contends the trial court erred in granting American's motion for summary judgment as a genuine issue of material fact remains as to whether a contract for insurance existed. In this regard, Rondale argues that there was no "meeting of the minds" as to an essential element of the contract, i.e., the amount of the insurance premium.

It is generally true that "[t]he premium to be charged on a policy of insurance is one of the essential terms so that no contract exists until agreement is reached with respect to it. *Associated Mutuals v. Pope Lumber Co.*, 200 Ga. 487, 491 (37 SE2d 393) (1946)." *All American Assur. Co. v. Brown*, 177 Ga. App. 402, 404 (339 SE2d 611). This rule stems in part from the principle that " '[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, *the assent of the parties to the terms of the contract*, and a subject-matter upon which it can operate.' Section 20-107 [now OCGA § 13-3-1]." (Emphasis supplied.) *Associated Mutuals v. Pope Lumber Co.*, 200 Ga. 487, 491 (2), supra. These essential elements are normally the subject of direct negotiations between the contracting parties. This is not true when insurance coverage is provided through the assigned risk plan.

"Generally, any insurer to whom a particular risk is assigned [by the assigned risk plan] must accept the assignment and provide coverage, but is allowed a higher premium commensurate with the risk.

[Compare *Harrison v. American Liberty Ins. Co.*, 155 Ga. App. 226 (1) (270 SE2d 389).] The premium is determined by a rating system approved by the Insurance Commissioner which is keyed to the nature, number and severity of convictions for law violations applicable to motor vehicles. This rating and premium information is available to 'producers' (insurance agents) in what is called the 'Automobile Insurance Plan Manual.' " *Employers Commercial Union Cos. v. Waldrop*, 124 Ga. App. 746, 747 (1) (186 SE2d 134).

In the case sub judice, American submitted a copy of the "Georgia Automobile Insurance Plan" (manual) and an examination of the manual reveals that coverage is to be made effective to qualified applicants at "12:01 a.m. on the day following the date of mailing of the application to the Plan . . ." or at 12:01 a.m. on a day designated by the applicant, "not to exceed 30 days from the date of application," or, "in the event there is in force a policy terminating . . ." more than 30 days from the date of application, "the Plan shall fix when the coverage becomes effective at 12:01 a.m. on the desired date of coverage." From this perspective, it is apparent that insurance coverage under the assigned risk plan is not the subject of normal negotiations between contracting parties, but is made effective by operation of law to serve the best interests of the general public. See *Young v. Allstate Ins. Co.*, 248 Ga. 350 (282 SE2d 115). It thus follows that the general rule of "mutual assent" as to the amount of the premium does not apply under the circumstances of the case sub judice. This conclusion is supported by undisputed evidence showing that Rondale was a qualified applicant under the assigned risk plan; that Sorrier was not acting as an agent of American; and that there was no communication by either Rondale or Sorrier with American before the effective date of the policy. See *Morris v. Fidelity & Cas. Co. of N. Y.*, 169 Ga. App. 883 (1) (315 SE2d 451). Consequently, since Rondale was aware that it was obtaining motor vehicle liability insurance under "[t]he Georgia Automobile Insurance Plan" and since American was required to provide coverage to Rondale, effective October 23, 1985, Rondale is bound by the mandatory premium prescribed by the assigned risk plan. See *Lynn v. Farm Bureau &c. Ins. Co.*, 264 F2d 921, 925, 926 (4th Cir. 1959).

2. Next, Rondale contends that it should be relieved of liability for the premium prescribed by the assigned risk plan because of a mutual mistake of fact as to the amount of the premium. We do not agree.

"It is the duty of contracting parties to inform themselves with reference to the subject matter about which they desire to contract." *Williams v. Lockhart*, 221 Ga. 343, 344 (2) (144 SE2d 528). "Ignorance of fact will not justify the rescission of a contract. [Cits.] Ignorance, as the term is here used, means a lack of knowledge concerning

a subject-matter, a failure to inform oneself; and results directly from negligence." *Prince v. Friedman*, 202 Ga. 136, 140 (2) (42 SE2d 434). In the case sub judice, Rondale's president testified that she was advised by Rondale's former insurance agent to investigate the Sorrier agent's premium "quote." Rondale's president also testified that she did not read the assigned risk plan's application she executed on behalf of Rondale and that she did not investigate the nature of the assigned risk plan because "at the time [she] was just glad to get a better quote . . . ." Under these circumstances, we find that Rondale's misunderstanding as to the amount of the premium was not the result of a "mutual mistake of fact" between Rondale and American, but was the result of Rondale's president's ignorance as to the nature of the assigned risk plan. Consequently, neither law nor equity will relieve Rondale of the consequences of its submission to the assigned risk plan.[2] See *Walsh v. Campbell*, 130 Ga. App. 194, 197 (202 SE2d 657).

3. Next, we address Rondale's argument that there remains a genuine issue of material fact as to whether American acted within a reasonable time in notifying Rondale of the terms of its insurance policy.

The assigned risk plan allows an applicant to reject a policy of insurance provided through the plan for any reason. "If . . . the applicant refuses to accept the policy, the designated company shall retain the short rate earned premium for the period of coverage or the minimum premium per car or policy as shown in the Manual of Rules and Rates, whichever is greater, and return the balance to the applicant."

An applicant's right of refusal becomes more meaningful when read in conjunction with Section 14 (A) of the manual. This section requires "the designated company" to notify an applicant of the terms of the policy no later than 30 days after the company's "receipt of the notice of designation and the premium or deposit from the Plan. . . ." In the case sub judice, the record shows that American failed to notify Rondale of the terms of the policy within 30 days of American's receipt of Rondale's application and deposit premium. Consequently, there remains a genuine issue of material fact as to the effect of this breach of duty on Rondale's liability for coverage under the plan.

4. It is unnecessary to address Rondale's final enumeration of error in the light of this court's holding above.

---

[2] Rondale filed a "THIRD PARTY COMPLAINT" against Sorrier, seeking indemnification "for any sum that may be recovered against [Rondale] in favor of [American] together with costs of this action." Rondale alleged that Sorrier was "negligent" and "committed a fraud and conceit" in estimating the insurance premium.

*Judgment affirmed in part and reversed in part. Pope and Benham, JJ., concur.*

DECIDED JANUARY 19, 1989.

*Newton, Smith, Durden & Kaufold, Howard C. Kaufold*, for appellant.
*Ronald C. Thomason*, for appellee.